(119 App. Div. 767)

### BUTLER v. GAZETTE CO.

(Supreme Court, Appellate Division, Third Department. May 8; 1907.)

1. WITNESSES—CROSS-EXAMINATION—DISCRETION OF COURT.

 The court acted within its discretion in permitting counsel to ask the plaintiff in a libel suit, upon cross-examination, if she had been a witness a dozen times, and, upon her answering in the negative, to follow up the denial by showing that she was mistaken.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 923.]

2. STIPULATIONS—RECEPTION OF EVIDENCE.

 Where, in a libel suit, the parties stipulated that certain depositions taken for use in another suit might be used, it was not error to admit them to prove that the publication was without malice, although otherwise they might have been objectionable as being evidence of facts relating to the plaintiff unknown to the defendant at the time of the publication.

3. LIBEL—ACTIONS—PUNITIVE DAMAGES.

 There can be no award of punitive damages for the publication of a libel, except upon proof either of actual malice or that the libel was recklessly or carelessly published by the defendant.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, § 351.]

4. SAME—ADMISSIBILITY OF EVIDENCE—MALICE.

 In an action for libel, on the question whether punitive damages should be awarded, any evidence was admissible which tended to prove or disprove actual malice on the part of the defendant.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, §§ 284, 317.]

5. SAME—RECKLESS PUBLICATION.

 In an action against a newspaper for libel, where punitive damages were demanded, evidence of defendant's press agents as to the care which they exercised in endeavoring to ascertain the truth of the statements contained in the libelous article was competent on the question whether the libelous article was carelessly or recklessly published.

 [Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Libel and Slander, § 317.]

6. SAME—TRIAL—INSTRUCTIONS.

In an action against a newspaper for libel, where the proof tended to show that any investigation of the item by the defendant before publication would have tended to deceive it into a belief in the truth of the article, and that vigilance in that respect would not have prevented the publication, a charge that the defendant was not bound to personally investigate the item, if the jury find upon the evidence that any investigation would have been of no avail, was not error.

7. TRIAL—INSTRUCTIONS—CONSTRUCTION AS A WHOLE.

In an action for libel, an instruction that "the amount of actual damages which may be assessed in a libel suit is entirely in the discretion of the jury," etc., was not prejudicial error, where the court also charged that "it must be a sum which will fairly compensate the plaintiff for the injury which she sustained by reason of the publication."

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 703, 715.]

8. SAME.

In an action for libel, it was not prejudicial error to charge that the plaintiff's damages were limited to the geographical territory in which the defendant's newspaper circulated, where the court also charged that, if the jury found for the plaintiff, she was entitled to recover fair compensation for all injury which the publication caused to her reputation, feelings, etc.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 703, 715.]

9. SAME.

Where the charge as a whole conveys the correct rule of law, the judgment should not be reversed, although detached sentences might be erroneous or prejudicial.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 703.]

Smith, P. J., dissenting.

Appeal from Trial Term, Chemung County.

Action by Annie Butler against the Gazette Company. From a judgment granting plaintiff inadequate relief, she appeals. Affirmed.

The defendant publishes a paper known as the Elmira Daily Gazette and Free Press. On the 11th day of August, 1903, it published in that paper an article as follows:

"Chicago, Aug. 11.—Annie Oakley, who says she won the applause of King Edward of England by an exhibition of marksmanship at Buckingham Palace, was a prisoner in the Harrison Street Police Court yesterday.

"She was arrested on complaint of Charles Curtis, who charged her with robbery. She pleaded guilty and was fined $25.

"According to the police the woman is addicted to the use of drugs. She formerly was with Buffalo Bill's show and commanded the salary of a light opera prima donna; was petted and fêted and awarded the honors at meetings of fashionable gun clubs. She was arraigned yesterday in Justice Caverly's court and her pitiful condition discovered.

"She is destitute and was forced to accept shelter from an old colored man named Curtis. He had her arrested, and when he relented would not appear in court against her, on seeing her shattered condition. Justice Caverly nevertheless sent her to the Bridewell for twenty-five days, to be restrained and cared for and treated there."

The plaintiff some years ago assumed the name of "Anna Oakley" as her professional or stage name. In 1885 she joined the "Buffalo Bill Company," or the "Wild West Show," and traveled with it under that name, excepting one season, until 1902, with her husband as her manager, throughout various parts of the world, giving exhibitions in the show almost daily in fancy shooting with a rifle and shotgun. While in London she gave private exhibitions of her marksmanship before the then Prince of Wales, now King Edward. The article published as aforesaid was false as applied to the plaintiff, for on the date of the arrest and publication she was living with her husband in New Jersey. On August 10, 1903, upon the complaint of one Charles Curtis,

a colored man, a woman was arrested at Chicago and taken before Justice John R. Caverly in the Harrison Street police court and pleaded guilty to the charge and was fined $25. At the time of such arrest the woman asserted that she was Annie Oakley, of the Buffalo Bill Show, the famous woman rifle shot, that she was the wife of a son of "Buffalo Bill," and that her true name was Lillie Cody. The complaint was made against her in that name. When brought before the justice she made substantially the same assertions through the officer who arrested her. She also stated to a reporter of the Chicago American that she was Annie Oakley, who used to be with Buffalo Bill; that she went to London with him, and mentioned the name of about 20 of her associate exhibitors, and gave an account of her exhibitions and travels with the company. At the time of this interview she was in an extremely nervous condition and was constantly asking for morphine.

The court on the trial submitted to the jury only two questions: First, as to whether the article in question was published of and concerning the plaintiff; and, second, if it was, then the amount of the damages. The defendant's newspaper circulates only in the vicinity of Elmira. The Buffalo Bill show had exhibited at that place on two occasions prior to the publication, but the plaintiff testified that she had no relations or intimate friends in Elmira, and she was able to give the name of but one person, outside of her lawyers, who she knew there. The jury rendered a verdict in her favor for six cents damages, and from the judgment entered thereupon this appeal is taken by her on the ground of inadequacy of damages. Further facts are stated in the opinion.

Argued before SMITH, P. J., and CHESTER, KELLOGG, and COCHRANE, JJ.

E. G. Herendeen, for appellant.
David B. Hill and Frederick Collin, for respondent.

CHESTER, J. The appellant seeks a reversal of this judgment because of alleged errors in the rulings of the learned trial justice with respect to evidence and in his charge to the jury. The rulings with respect to evidence may be grouped in two classes. In the first place, there was a series of rulings admitting evidence which tended to show that a number of other suits had been brought by this plaintiff against other newspapers for the publication of the same libel at about the same time. The rule is well settled that a defendant cannot show in mitigation of damages that the plaintiff has commenced actions against other papers for publishing the same libel. Palmer v. News Publishing Co., 31 App. Div. 210, 52 N. Y. Supp. 539; Palmer v. Matthews, 162 N. Y. 102, 56 N. E. 501. Notwithstanding it appeared incidently in the course of the trial that other libel actions commenced by the plaintiff against other papers were pending, yet we think there was no infraction of the rule referred to. The plaintiff was asked upon cross-examination how many times she had been a witness, and if she had been a witness a dozen times, and she replied, "No, sir." She then, in response to further questions along this line, testified that she had been a witness twice in Rochester and once in Scranton; that she also had been a witness in Newark, New Orleans, St. Louis, Topeka, Cincinnati, Toledo, Charleston, and in Buffalo, and then said perhaps she had been a witness a dozen times. This evidence was taken under objection and exception. It was proper exercise of the discretion of the court to permit counsel on cross-examination to ask her how many times she had been a witness before, and, in view of her saying she had not been a witness a dozen times, it was proper to permit him to follow up this de-

nial by showing, if he could, that she was mistaken as to that fact. She also stated, without objection, that she was sworn upon the trial of the case of Butler v. Rochester Daily Herald, at Rochester, N. Y., as a witness. There were also stipulations received in evidence made by the attorneys on both sides that evidence taken at Buffalo in an action then pending in the United States Circuit Court, entitled "Annie Butler v. The Evening Times Company," and evidence taken at Chicago in actions then pending in the Supreme Court, Monroe county, entitled "Annie Butler v. The Evening Times Company," "Annie Butler v. The Rochester Herald Company," and "Annie Butler v. The Union and Advertiser Company," might be read in evidence on the trial of this action. It thus appeared by the stipulations of the parties that there were several actions pending brought by this plaintiff against other newspapers. If the jury inferred from these facts that these other actions were libel suits, and that still others brought by the plaintiff were pending, because of the number of times she had been sworn as a witness, the inference did not arise because of any violation of the rule of evidence above mentioned, but because of the stipulations of the parties and by reason of a cross-examination along legitimate lines, which the court had the discretion to allow.

It is urged in the next place by the appellant that the court erred in admitting in evidence certain depositions taken in Chicago and Buffalo, showing what occurred at Chicago on August 9th and 10th concerning the original publication of the libel in the Chicago newspapers and its transmission by the Publishers' Press Association to the defendant, and relating to the arrest, trial and sentence of the Cody woman. If this evidence was not admissible otherwise, it appears to us that it was made so by the stipulations of the parties. The general rule of law undoubtedly is that evidence of facts and circumstances relating to a plaintiff, unknown to a defendant at the time of the publication of a libel, cannot be shown for the purpose of proving that the publication was without malice. But notwithstanding this rule, and with full knowledge of what the depositions contained, the attorneys for the parties here entered into the stipulations which have already been referred to. The stipulation under which the Chicago depositions were read in evidence recited that they might be read upon the trial of this action as if the order under which the same was taken had been granted in this action. Such order provided that the evidence might be read subject to any objections which are entered upon the record, which objections are to be passed upon by the trial court at the time of reading the depositions. The stipulation concerning the Chicago depositions related to the evidence of the witnesses Caverly, Ayers, Stout, and Pratt. There was another stipulation to the same effect with reference to the deposition of the witness Wright taken at Buffalo. There was a further stipulation that John R. Caverly was on August 10, 1903, a duly appointed and qualified justice of the peace and police magistrate in the city of Chicago, and was sitting as such in the Harrison Street police station, and had jurisdiction of the offense with which this woman, Lillie Cody, was charged, and had jurisdiction to try and sentence her as he did. It was not competent for the court,

under the stipulations, to rule out the entire depositions, because they were alleged to be immaterial or irrelevant, for the sufficient reason that the parties had formally stipulated that the evidence contained therein might be read, and no objection to the materiality of an entire deposition was stated on the record when it was taken. The trial justice received the evidence only because the parties had stipulated that he should do so, and we are unable to discover from the printed case any error as to any ruling made as to any specific objection stated on the record when the depositions were taken. There were many such objections taken as to the materiality of the evidence called for by certain questions, but they were so closely related to other parts of the deposition which were not specifically objected to that the court properly overruled the objections. In the stipulation under which the deposition taken in Buffalo of the witness Wright was read in evidence, no mention is made of the order under which the deposition was taken. It can hardly be claimed, therefore, that the provision in such order that the evidence is taken subject to any objection made upon the trial applies. If the provision was, however, held to apply, and it was error for the court to receive the evidence, the error was harmless, as substantially all the facts stated were otherwise proven.

For another reason, much, if not all, of the evidence contained in these several depositions were properly received in evidence. The decisions throughout the country are to some extent conflicting, but the great weight of authority is to the effect that there can be no award of punitive or exemplary damages, except upon proof either of actual malice or that the libel was recklessly or carelessly published by the defendant. 18 A. and Eng. Enc. of Law, 1093; Smith v. Matthews, 152 N. Y. 152, 46 N. E. 164. The degree of actual malice on the part of the defendant is a very important factor in determining whether any punitive or exemplary damages should be awarded to the plaintiff, and, if so, upon the question of the amount of such damages. The authorities· hold, therefore, that in order to aggravate the damages the plaintiff is entitled to show and to have the jury consider anything which tends to establish the existence of such malice or intensify its degree, and that, on the other hand, the defendant is entitled to bring to the consideration of the jury any circumstances which legitimately tend to disprove or lessen the degree of such malice. 18 Am. & Eng. Enc. of Law, 1097, and cases cited. It was said in Carpenter v. New York Evening Journal Publishing Company, 111 App. Div. 272, 97 N. Y. Supp. 478, after reviewing the authorities in this state:

"The foregoing and many other cases settle the proposition that exemplary damages depend upon a finding of fact by the jury of express malice, evidenced by the falsity of the libel, or the ill-will of the publisher, or the wanton and reckless publication."

As the question whether the defendant was careless or reckless in the publication of the libel without proper investigation as to its truth was in the case, the evidence of its press agents as to the care which they exercised in endeavoring to ascertain the truth of the statements contained in the article was material on that question. So far, there-

fore, as these depositions bear on that question, they were for that reason also properly received.

Counsel for the appellant also urges that the charge to the jury was erroneous in several respects. The court charged the jury, at the request of defendant's counsel, that the defendant was not bound to personally investigate this item in Chicago, if the jury find upon the evidence that investigation there would have been of no avail, and the plaintiff excepted. The proof tended to show that any investigation there would have tended to deceive the person making it into a belief in the truth of the article, and that vigilance in that respect would not have prevented the publication. If personal investigation by the defendant would have availed the plaintiff nothing in preventing the publication, she cannot complain that the court declined to charge that the defendant was bound to do that which would have been of no benefit to her, if it had been done.

Plaintiff's counsel also complains of the charge with respect to the question of damages. In one place the court said:

"The amount of actual damages which may be assessed in a libel case is entirely in the discretion of the jury. It may be six cents, which is termed 'nominal damages,' or it may be a greater sum, as the jury may determine. If the plaintiff has been libeled, the rule is that she is entitled to recover some damage—as I said before, nominal damages, or it may be a greater sum."

This was excepted to, and is criticised as unsound; but the justice said in the very next sentence:

"It must be a sum which will fairly compensate the plaintiff for the injury which she sustained by reason of the publication."

So the plaintiff could not have been injured by the charge.

The plaintiff also asked the court to charge that nominal damages would not be a vindication of the plaintiff, and that a nominal verdict would be a denial of justice. These requests were refused, and the court charged on the defendant's request that a verdict for nominal damages would characterize the article as false, and be a vindication of the plaintiff's reputation, and the plaintiff excepted. A verdict for any amount for the plaintiff of necessity determines the falsity of the article as applied to the plaintiff, and clearly vindicates her reputation. While a verdict for nominal damages is a vindication for the plaintiff, it may not furnish adequate compensation for the damages she has suffered; but, under the authorities, the amount of damages in a libel suit are entirely in the discretion of the jury. In Holmes v. Jones, 147 N. Y. 67, 41 N. E. 411 (39 L. R. A. 33), which was an action for libel, Andrews, C. J., said:

"The amount of damages in an action for libel is peculiarly within the province of the jury. The jury may give nominal damages, or damages to a greater or less amount, as they shall determine. The jury may accord damages which are merely compensatory, or damages beyond mere compensation, called 'punitive or vindictive damages,' by way of example or punishment, when in their judgment the defendant, was incited by actual malice or acted wantonly or recklessly in making the defamatory charge."

The trial justice, in submitting the case now under consideration to the jury, was exactly in line with the case cited, for he said to them:

"If you find that this plaintiff is entitled to recover damages, after you have determined the amount, you will then consider and determine whether or not this is a case where she should also have punitive damages or smart money. Punitive damages or smart money is allowed in libel cases where the item or matter published was the result of actual malice—that is, where it was incited by actual ill-will or some other improper motive; and it may be allowed where the publication was wanton or reckless, and where the publisher had no reason to believe the truth of the article, and took no steps to discover whether or not it was true. In such case the jury may allow such sum, in addition to the actual damages, as they may think proper under all the circumstances of the case, as a punishment for the publication, and as a warning to others."

The appellant also urges that it was error for the court to charge, which it did at the request of defendant's counsel, that plaintiff's damages are limited and restricted to the geographical territory in which this newspaper circulated. It is conceded by the appellant that the jury might properly take into consideration the extent of the circulation of the newspaper in fixing the damages; but it is urged that the charge as made excludes the damages to the plaintiff's feelings, and her mental suffering and distress caused by the publication. If that is so, and it was error to charge the request, the error was cured when the court almost immediately thereafter charged the jury at the plaintiff's request, and which was the last word spoken to the jury by the court before they retired:

"That if the jury find this publication referred to the plaintiff and was false, that it was libelous per se, and the moment it was published a perfect and indefensible cause of action accrued to the plaintiff to recover of the defendant fair compensation for all injury which the publication should cause to the reputation, feelings, good name, and fame of this victim, and that a conclusive presumption of law arises that she has been damaged."

We should not seize hold of isolated portions of a charge for the purpose of discovering errors, and where the charge as a whole conveyed to the jury the correct rule of law, as we think it does here, the judgment should not be reversed, although detached sentences might be erroneous or prejudicial to the defendant. Caldwell v. New Jersey Steamboat Company, 47 N. Y. 282; Losee v. Buchanan, 51 N. Y. 492, 10 Am. Rep. 623; People v. McCallam, 103 N. Y. 597, 9 N. E. 502.

We have examined the numerous other exceptions, and think none of them present error justifying a reversal.

The judgment and order should be affirmed, with costs. All concur, except SMITH, P. J., who dissents.