OPINION OF THE COURT
Wachtler, J.
The question on this appeal is whether a newspaper, which has been sued for publishing an allegedly libelous letter to the editor, can be precluded from answering the complaint or making any defense to the suit if it refuses to *162 disclose to the plaintiff the name of the person who wrote the letter. The trial court found the sanction appropriate for refusal to comply with its order directing the newspaper to satisfy plaintiff’s demand for disclosure of the letter writer’s identity. The Appellate Division reversed relying on section 79-h of the Civil Rights Law, popularly known as the Shield Law, which grants a journalist an exemption from being “adjudged in contempt” for refusing or failing to disclose the “source” of any particular news item. The Appellate Division also granted the plaintiffs leave to appeal to this court on a certified question as to the correctness of its order.
The Babylon Beacon is a weekly newspaper published on Long Island. Robert Matherson is the owner of the Oak Beach Inn which is also located on Long Island. In March of 1981 Matherson ran a paid advertisement in the paper in which he criticized local officials for failing to take action to protect the public from a dangerous curve on Montauk Highway. The advertisement was captioned “Let’s Stop The Slaughter On Our Highways”. On April 9, 1981 the newspaper published a letter to the editor accusing Math-erson of contributing to the problem and otherwise endangering the public safety in his management of the Oak Beach Inn. The letter alleged, for example, that obviously intoxicated persons were served alcoholic beverages at the Inn, that fire code violations were reported, and that the Inn and the adjacent parking lot were permitted to become dangerously overcrowded. This letter was printed under the caption “Hypocrisy Cited In O.B.I. Advertisement”. At the end of the letter the paper noted that the writer’s name had been “withheld upon request”.
In September of 1981 the plaintiffs commenced a libel action against the newspaper, its owner, and various members of the staff, claiming that the letter contained false statements which had been maliciously published by the defendants. Simultaneously the plaintiffs served a show cause order demanding that the defendants be compelled “pursuant to CPLR Sec. 3102(c)” to disclose “the name and last known address of the writer or writers” of the letter to the editor. In an affidavit attached to the show cause order plaintiffs contended that “knowledge of this matter is *163 necessary in order for the plaintiffs to determine who to sue, pursuant to CPLR 3102(c)”. The defendants opposed the application claiming that the motion for disclosure was premature because issue had not been joined. The defendants also contended that the demand for disclosure raised “serious constitutional questions of freedom of speech and freedom of the press”. In reply plaintiffs observed that “CPLR 3102(c) permits an examination prior to commencement of an action for the purpose of identifying prospective defendants to plaintiffs’ contemplated suit”. The court granted the plaintiffs’ motion and directed defendants to furnish a copy of the letter to the plaintiffs.
The defendants then moved for reargument. They stated that it is the policy of the newspaper to require those who submit letters to the editor to provide their names, addresses and telephone numbers, if they wish the letters to be published. Defendants noted, however, that it was also the policy of the paper to print letters anonymously when, as in this case, the letter writer so requests. They argued that compelling disclosure of the letter writer’s identity under these circumstances would infringe the defendants’ First Amendment rights and would also violate section 79-h of the Civil Rights Law of this State. The court granted reargument but adhered to its original decision stating: “Civil Rights Law § 79-h, from a plain reading of its terms, does not prevent disclosure. What it does is eliminate contempt as a remedy for failure to comply with court-ordered disclosure. (See CPLR R.3124). Contempt aside, there are other remedies available. (See CPLR § 3126).”
When the defendants still refused to disclose the name of the letter writer, the plaintiffs moved to have them held in contempt for disobeying the court’s order which: “thereby deprived [plaintiffs] of their cause of action against the author of said letter”. This however was only requested “in the alternative”. The primary relief requested was an order, pursuant to CPLR 3126, striking the defendants’ answer and directing the entry of a default judgment against the defendants on the libel complaint. In support of their contention that this remedy was appropriate, the plaintiffs now urged that: “the information sought goes to the heart of the plaintiffs’ libel action. It is an essential *164 element in plaintiffs’ proof of malice; and may conceivably reveal that defendant newspaper had no reliable source, or that his reliance upon this particular source showed a reckless disregard for the truth”. In response to this latter contention the defendants urged that there was “no need for the drastic remedy” of striking their answer because the defendants did not intend to make “affirmative use” of the anonymous letter writer in defending against the complaint. They stated that they intended to defend the suit completely on the basis of their own actions, “without relying on any of the investigation or underlying material that the source may or may not have used”.
The court held that the remedy of contempt is barred by section 79-h of the Civil Rights Law. The court also held, however, that the Shield Law “in no way inhibits the other remedies” specified in CPLR 3126, “which may be imposed upon a party for refusal to comply with an order directing disclosure”. Relying on CPLR 3126 (subd 3), the court ordered that the defendants’ answer be stricken and that the plaintiffs be permitted to move for summary judgment, or other appropriate relief, unless the defendants made the letter available for inspection within 15 days.
The Appellate Division granted a stay and then reversed. The appellate court noted that privileged material was exempt from discovery under CPLR 3101 (sübd [b]) and concluded that section 79-h of the Civil Rights Law established such a privilege for journalists with respect to their sources. The court observed that the latter statute only speaks in terms of shielding the journalist from contempt, but held that it “would be unduly restricted if journalists invoking the privilege were subjected to large monetary judgments in civil actions upon their refusal to reveal news sources simply because a contempt proceeding was not involved”. (92 AD2d, p 104.) The court also held that a letter to the editor qualifies as “news” within the meaning of the statute.
 Although we agree with the Appellate Division that the order of the trial court should be set aside, we do so for different reasons.
The Shield Law was adopted in 1970 as section 79-h of the Civil Rights Law (L 1970, ch 615, § 1). The sponsor of *165 the bill stated that it was intended to protect “newsmen from being held in contempt for refusing to disclose their news sources before a court inquiry, legislative hearing or any other body having contempt powers” and had been prompted by recent efforts made by Federal authorities to subpoena journalists in order to obtain evidence which could later be used in criminal prosecutions (see NY Legis Ann, 1970, pp 33-34). When the Governor signed the bill he also noted that it “protects journalists and newscasters from charges of contempt” and observed that the “threat to a newsman of being charged with contempt and of being imprisoned for failure to information or its sources can significantly reduce his ability to gather vital information” by cutting off “valuable sources of information” (see NY Legis Ann, 1970, p 508).
By its terms the statute expressly provides for “Exemption of professional journalists and newscasters from contempt” (Civil Rights Law, § 79-h, subd [b]). Subsequent amendments have clarified and broadened the statute in some respects (see L 1975, ch 316, § 1; L 1981, ch 468, §§ 1-3). However, the Legislature has never established ah absolute right or granted journalists complete immunity from all legal consequences of refusing to disclose evidence relating to a news source. At the time of these proceedings the relevant portion of the statute provided that “no professional journalist or newscaster * * * shall be adjudged in contempt by any court, the legislature or other body having contempt powers, nor shall a grand jury seek to have a journalist or newscaster held in contempt by any court, legislature or other legislative body having contempt powers for refusing or failing to disclose any news or the source of any such news” (Civil Rights Law, § 79-h, subd [b]).
Contempt is the traditional remedy employed by public bodies against those who have refused to comply with orders to testify or disclose information. It usually involves imprisonment, a fine or both (see, e.g., CPLR 2308; Judiciary Law, § 753). It is considered a drastic measure (see Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3126:4) and often is defined and prosecuted as a criminal offense (see Penal Law, §§ 215.50, 215.60, 215.65; Judiciary Law, § 750, subd A, pars 3, 5, 7). *166 The sanctions authorized by CPLR 3126 and its predecessors were designed to provide a court with alternative, less drastic, means to enforce disclosure in civil cases (see Feingold v Walworth Bros., 238 NY 446; Siegel, op. cit., C3126:4). A person against whom these sanctions are properly employed cannot be said to have been held or adjudged in contempt (see Feingold v Walworth Bros., supra). Indeed contempt is not a penalty enumerated in CPLR 3126 and a court must resort to other more general provisions of the law in the rare instances where it may be necessary to hold a person in contempt for failure to make disclosure in a civil case (see Siegel, op. cit., C3126:l, C3126:3, C3126:4).
The Shield Law’s unqualified immunity from contempt granted to journalists who refuse to disclose their sources, would preclude a court from employing that remedy against such a journalist in a civil case, even in those rare instances where it might otherwise be considered the only appropriate or effective remedy. However, the statutory “[e]xemption * * * from contempt” cannot be fairly read to general exemption from the sanctions authorized by CPLR 3126, most of which function to prevent a party who has refused to disclose evidence from affirmatively exploiting or benefiting from the Unavailability of the proof during the pending civil action.
Of course, if fully utilized some of those sanctions, such as the power of the court to strike pleadings (CPLR 3126, subd 3) may be only theoretically less drastic than contempt in a particular case. A newspaper involved in a substantial libel action may well find the threat of contempt less intimidating than the thought of being entirely stripped of its defenses if it continues to preserve the confidentiality of its source. This type of practical consideration should be taken into account whenever CPLR 3126 is invoked against a newspaper or journalist for failure to disclose a source in a civil case. The consequences of nondisclosure imposed pursuant to the CPLR should not create new obstacles to newsgathering or undermine the strong legislative policy expressed in the Shield Law. The general rule, that the demanding party should not be granted more relief for nondisclosure than is reasonably *167 necessary to protect legitimate interests (Feingold v Walworth Bros., supra), should be applied with special force in cases involving nondisclosure of sources by newspapers and journalists.
In this case there was no need for the court to strike the defendants’ answer and thus subject them to a default or summary judgment on the libel complaint. To the extent, as the plaintiffs belatedly contend, the defendants’ refusal to identify the letter writer may deprive them of evidence relevant to the issue of malice, other remedies are available. CPLR 3126 broadly permits a court to make such orders “as are just” including an order prohibiting the noncomplying party from “supporting or opposing designated claims”, or introducing evidence on a particular point (subd 2). Relief of this nature should adequately protect the plaintiffs’ interests without intolerably burdening the newspaper. Indeed, as indicated, the publication agreed to accept such a limitation in defense of the suit by stating its willingness to defend that allegation of malice by relying on proof of its own independent investigation, without placing any reliance on its source. The court should have limited its order accordingly.* A newspaper should not be required to accept substantial financial loss as the price for continuing to honor a commitment to maintain the confidentiality of one of its sources.
To the extent the plaintiffs demand disclosure of the letter writer’s identity in order to commence a suit against the author, which was the original basis for the demand, the sanctions authorized by CPLR 3126 are not available. That request has no bearing on the plaintiffs’ action against these defendants. In fact the information was not requested by notice or stipulation pursuant to CPLR 3102 (subd [b]) which prescribes the “normal method” for disclosure between parties to a pending suit. It was sought *168 pursuant to CPLR 3102 (subd [c]) which provides for disclosure “[b]efore an action is commenced * * * to aid in bringing an action” by, for instance, supplying the name of a potential defendant (see Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3102:4). This permits disclosure between persons who are not parties to a suit for which the evidence is requested when, as here, a court order is obtained (CPLR 3102, subd [c]). Against a nonparty the appropriate and only effective remedy generally is contempt (Siegel, op. cit., C3126:l; First Prelim of Advisory Comm on Practice and Procedure, NY Rep, Legis Doc, 1957, No. 6[b], p 160). The alternative sanctions available under CPLR 3126 apply exclusively to a “party, or a person who at the time a deposition is taken or an examination or inspection is made, is an officer, director, member, employee or agent of a party or otherwise under a party’s control” (see, also, Siegel, op. cit., C3126:4).
Holding the defendants in contempt for failure to supply the information necessary to commence a suit against the letter writer is prohibited by the Shield Law. Use of alternative sanctions pursuant to CPLR 3126 should also be precluded, not only because the plaintiffs treated these defendants as nonparties when they obtained the discovery order to aid the contemplated suit, but because the basic policy of the Shield Law would be undermined if CPLR 3126 were not strictly read to accord journalists that status under these circumstances. As indicated above, the theory behind the Shield Law is that many valuable sources of news will be lost if journalists can be compelled on threat of contempt to reveal their sources in public forums, thus exposing them to legal, and possibly illegal, risks. This policy would be subverted if the alternatives to contempt authorized by CPLR 3126 could be invoked solely to coerce a newspaper into exposing its source to a potential civil suit for damages.
Accordingly, the order of the Appellate Division should be affirmed.

 That does not mean, as the dissent states, that the defendants “may control the course of plaintiffs’ lawsuit by dictating what plaintiffs may discover”. We simply note that the concession made by the defendants in this case appears to provide reasonable protection to the plaintiffs, who have not contended otherwise or proposed any alternative sanction which would more adequately assist them in pursuing their suit without knowledge of the source’s identity. The plaintiffs have simply taken the position that any failure on the part of the defendants to make full disclosure of every item “reasonably” demanded, should entitle the plaintiffs to obtain a default judgment.