OPINION OF THE COURT
Eli Wager, J.
In this libel action, the defendants move for a protective order striking certain of plaintiffs’ interrogatories and the plaintiffs cross-move for an order compelling answers. The media defendants urge the court to enunciate a “reporter’s privilege” under the State and Federal Constitutions, while the plaintiffs, asserting that the burden of proof imposed upon them by New York Times Co. v Sullivan (376 US 254 [1964]) and its progeny entitles them to broad disclosure, resist limitations including those which may be imposed by the Constitution, the Shield Law or even the CPLR.
THE PLEADINGS
Plaintiffs are alleged to be a broker-dealer engaged in the business of brokering money instruments and other securities *248 and the corporate founder, president and chief executive officer. The defendants are a corporation which publishes the American Banker, a daily newspaper, and one of its reporters. It is alleged that the reporter wrote and the paper published an article on August 1,1983 and a second on August 8,1983 which linked the plaintiff First United Fund Ltd. to the “Fort Lincoln affair,” described as a criminal and fraudulent scheme to defraud certain banks. Plaintiffs allege that the defendants published the articles “in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties” or “with knowledge of their falsity or in reckless disregard of their truth or falsity” and they seek $45,000,000 in damages plus punitive damages.
In their answer, the defendants plead that the articles are “qualifiedly privileged” under US Constitution 1st Amendment and the law of New York. They allege that the plaintiffs are “public figures,” that the articles concerning plaintiffs were of public concern and warranted public exposition, that the statements are fair and truthful, that they constitute opinion and/or fair comment, that they constitute a neutral report of newsworthy events and that the statements were made in the discharge of the defendants’ social, moral, public and/or private duty to communicate relevant news to their readers.
THE INTERROGATORIES
The plaintiffs’ interrogatories contain six pages of detailed definitions and 25 questions divided into numerous paragraphs and subparagraphs. Defendants apparently intend to respond to all but 10 questions as to which they have lodged objections.
The interrogatories objected to are number 2 which inquires as to whether defendants have ever discussed, spoken or written about standards for determining truth or falsity of statements made to reporters, or reckless disregard of the truth, or gross irresponsibility, or the accepted standards of information gathering and dissemination or negligence by a reporter, editor or newspaper; number 13 which demands that they state the circulation of American Banker by State and foreign country; number 15 which demands identification of all documents supplied to their insurance carrier relating to this lawsuit; number 16 (b) which demands all drafts of the two articles; number 17 which demands identification of all sources of the disputed statements in the articles, all documents relating to each such statement, including communications between the defendants and the sources, and what steps were taken to establish the *249 truth of each statement; number 18 which inquires whether there were conversations or other communication concerning the subject matter of the articles between anyone associated with the American Banker and anyone else prior to publication and identification of all documents relating to such correspondence, conversation or other communication; number 19 which demands identification of all expense vouchers, reimbursement requests, travel logs, diaries or telephone bills related to the investigation; number 22 which requests identification of every article ever published by the defendants which mentions the plaintiffs; number 24 which demands identification of all persons who know or have been told about the subject matter of any information claimed by the defendants to be privileged and the identity of any persons who were present or overheard such communication, and identification of all documents or communications relating to the subject matter or confidentiality of such documents or communications; and number 25 which demands that they state each fact which is the basis for each of the defenses pleaded in the answer.
Defendants contend that some of the interrogatories exceed the scope of discovery permitted by the CPLR and others invade the “Constitutional privileges accorded to a journalist’s sources and investigatory and editorial work product.” They state that they will rely on New York’s Shield Law (Civil Rights Law § 79-h) only in the event the court rejects their claim to constitutional protection.
The plaintiffs urge that because one defense is predicated on the notion that they are “public figures,” they will have to show “actual malice” (New York Times Co. v Sullivan, 376 US 254, supra). They also urge that the defense that the articles “were within the sphere of legitimate public concern and were reasonably related to matters warranting public exposition” is an invocation of the qualified privilege discussed in Chapadeau v Utica Observer-Dispatch (38 NY2d 196) applicable when a private person is involved in a matter of public concern and which requires a showing of “gross irresponsibility.” Finally, plaintiffs contend that they must show actual malice in order to recover punitive damages, citing Gertz v Robert Welch, Inc. (418 US 323 [1974]).
The term “malice” as used in its First Amendment constitutional sense is not to be equated with a base or unworthy motive, but is instead defined as knowledge of falsity or reckless disregard of whether it was false or not (Rinaldi v Viking Penguin, 52 NY2d 422; Trails West v Wolff, 32 NY2d 207). The plaintiff *250 must, in order to show reckless disregard of the truth, prove through direct or circumstantial evidence that there were facts available to the defendant that did or should have aroused serious doubts as to the accuracy of the published material (James v Gannett Co., 40 NY2d 415). Such a showing may require inquiry into editorial processes and the subjective state of mind of the journalist (see, Karaduman v Newsday, Inc., 51 NY2d 531, citing St. Amant v Thompson, 390 US 727 [1968]; Herbert v Lando, 441 US 153 [1979]), whereas objective proof is generally sufficient to show gross irresponsibility (Karaduman v Newsday, Inc., supra; Ortiz v Valdescastilla, 102 AD2d 513).
Whether plaintiffs are public figures or private persons defamed in articles within the sphere of a legitimate public concern cannot be determined on the present record and may, in any event, be a matter for the trier of fact (see, Ortiz v Valdescastilla, supra; Maule v NYM Corp., 54 NY2d 880). Thus, the plaintiffs must be prepared to show both actual malice (which requires clear and convincing evidence [New York Times Co. v Sullivan, supra; Gertz v Robert Welch, Inc., supra]) and gross irresponsibility (which may be shown by a fair preponderance of the evidence [Chapadeau v Utica Observer-Dispatch, supra]). Nevertheless, even though the proof required differs in degree, under both standards plaintiffs must show that the defendants had or should have had substantial reasons to question the accuracy of information received or the bona fides of the source (Ortiz v Valdescastilla, supra). Thus, proof sufficient to show actual malice should be sufficient to show gross irresponsibility and the disclosure at issue here will be analyzed with reference to the higher standard.
DISCUSSION
The broad discovery sought by plaintiffs is apparently based on the notion that proving actual malice requires a Sisyphean effort unknown in jurisprudential history prior to Sullivan (supra). However, long before Sullivan, recovery of punitive damages by libel plaintiffs required proof of actual malice, i.e., that the publication was wanton and reckless and that the publisher had no reason to believe the truth of the article and took no steps to discover whether it was true or not (Butler v Gazette Co., 119 App Div 767). Butler was cited in Herbert v Lando (supra) (the case relied upon by plaintiffs in support of their interrogatories) to illustrate the fact that inquiry into the editorial process is not a new concept, even though a showing of fault is now required of all libel plaintiffs. The court explicitly noted that the discovery sought there would be governed by the rules of civil procedure *251 and judges were counseled to exercise appropriate control over the discovery process. It thus appears that even though libel plaintiffs are entitled to extensive disclosure, they must abide by established rules.
Because the Court of Appeals in this State counsels that disclosure disputes, even in actual malice cases, should be disposed of on nonconstitutional grounds if possible before reaching a constitutional question (Matter of Beach v Shanley, 62 NY2d 241), the threshold issue here is whether the disputed interrogatories are permissible under the CPLR and New York’s Shield Law (Civil Rights Law § 79-h). Those which survive such scrutiny may be entitled to the constitutional protection urged by defendants — provided New York recognizes such a privilege.
OBJECTIONS BASED ON THE CPLR
Interrogatory number 2, which is unlimited in time and applies to every discussion or writing by the defendants relating to a vast range of topics, is the kind of vague “blunderbuss” question not permitted by our rules (Nankof v ARA Servs., 96 AD2d 493). Interrogatories 18 and 24 are improper on similar grounds and, as discussed below, seek information which is protected by the Shield Law. Number 15, which demands identification of documents defendants supplied to their insurance carrier with respect to this lawsuit, is also improper (Schneider v Schneider, 94 AD2d 700). Since circulation figures and areas of distribution are relevant in a libel action (Bernhard & Co. v Tobacco Leaf Pub. Co., 148 NYS2d 639) and defendants do not assert that they have no such tabulations, they will be directed to furnish the information requested in number 13. Although prior articles mentioning the defendants (interrogatory 22) are clearly relevant on the issue of malice, it appears that material published by the American Banker can be obtained from Nexis, a computer data base available to the public. Furthermore, defendants cannot be compelled to create an otherwise nonexistent document (see, Jonassen v A.M.F., Inc., 104 AD2d 484; Welsh v New York City Tr. Auth., 78 AD2d 550). Interrogatory 25 is improper since it involves conclusions of fact or law and argumentative matter (Lakeville Merrick Corp. v Town Bd., 23 AD2d 584; Blitz v Guardian Life Ins. Co., 99 AD2d 404).
Interrogatories 2,18,24 and 25, however, seek much information that is clearly relevant and which may more properly be obtained through depositions or other discovery devices.
OBJECTIONS BASED ON THE SHIELD LAW
Although the Supreme Court of the United States has not recognized a privilege for the protection of confidential news *252 sources, a number of States have done so by statute (see, Hunter, A Reprise on Herbert v. Lando and the Law of Defamation, 71 Ky LJ 569 [1983]). New York’s Shield Law (Civil Rights Law § 79-h) provides absolute protection from disclosure of both news and the source in both criminal and civil matters (see, Matter of Beach v Shanley, supra). The information must, however, have been imparted under a “cloak of confidentiality” (see, e.g., People v Korkala, 99 AD2d 161; see also, Oak Beach Inn Corp. v Babylon Beacon, 62 NY2d 158; Greenberg v CBS, Inc., 69 AD2d 693). In the instant case, defendants assert that all sources unidentified in the articles (e.g., “an official at one of the banks” or an “investigator”) were promised that their names would not be disclosed.
Accordingly, defendants cannot be compelled to respond to interrogatories number 17,18 and 24 (which as noted above are improper for the additional reason that they are overbroad) since each seeks, inter alla, identification of sources unidentified in the articles, and documents and communications relating to information obtained from such sources. Although the plaintiffs are not entitled to application of the balancing test of the competing private and public interests which has evolved in First Amendment cases, since the all-inclusive Shield Law omits such a provision (see, Matter of WBAI-FM v Proskin, 42 AD2d 5, dissenting opinion of Justice Cooke which was cited with approval in Matter of Beach v Shanley, supra), they may be entitled to an order imposing a CPLR 3126 sanction upon the defendants for their failure to disclose should it appear that defendants intend to rely on undisclosed sources in their defense (see, Greenberg v CBS, Inc, supra) or if it appears that such information “ ‘goes to the heart of plaintiffs’ libel action’ ” (Oak Beach Inn Corp. v Babylon Beacon, supra, p 163). At this early stage in the litigation, imposition of sanctions would be premature.
It also appears that interrogatory number 19 must be stricken upon the ground that disclosure of expense vouchers, reimbursement expenses, travel logs, diaries and telephone bills may expose confidential sources and circumvent the statute.
CONSTITUTIONAL EDITORIAL PRIVILEGE
The only interrogatory objected to that has survived analysis so far (in addition to number 13) is number 16 (b) which seeks disclosure of all of the drafts of the two articles. Disclosure of drafts may be deemed material and relevant on the issue of defendants’ state of mind. Defendants allege, in only the most perfunctory way, that disclosure would tend to reveal confiden *253 tial sources. In the end, they rely upon a constitutional “editorial process” privilege.
New York’s Court of Appeals has not enunciated an editorial process privilege and, in fact, has recently refused to do so on the ground that the disclosure at issue in the case could be determined on nonconstitutional grounds (Matter of Beach v Shanley, 62 NY2d 241, supra). It appears, however, that that court may be sensitive to First Amendment concerns as evidenced by its discussion of the issue of “editorial judgment” in Rinaldi v Holt, Rinehart & Winston (42 NY2d 369, cert denied 434 US 969). “Editorial judgment,” deemed a matter “in which the courts, and juries, have no proper function” (42 NY2d, at p 383), was defined as including choice of material, decisions as to limitations on size and content and treatment of public issues and public officials whether fair or unfair. It is interesting to note that the court paraphrased Justice Burger’s decision in Miami Herald Pub. Co. v Tornillo (418 US 241 [1974]), a decision which the Herbert court held inapplicable to the discovery at issue there since Miami was not a libel action. Significantly, Rinaldi was a libel action. Nevertheless, the Miami ruling was applied in Rinaldi only on the issue of the probative value of trial evidence and not to a disclosure issue.
The Appellate Division, First Department, has, in haec verba, created a constitutional qualified editorial privilege of sorts. In People v Korkala (99 AD2d 161, supra), that court, opining that compelled production of a reporter’s “resource material” would have a chilling effect on the flow of information to the press and the public and would be as invidious as compelled disclosure of confidential informants, ruled that such disclosure can be compelled only upon a showing that the information is highly material and relevant, necessary or critical to the maintenance of the claim and not obtainable from any other source.
Although the Korkala privilege is stated to be applicable in both criminal and civil cases, it appears to be limited to information obtained from an identified source which was not included in the publication, i.e., those portions of an interview with an identified source which were not broadcast. Drafts of an article to be published written by a reporter would appear not to constitute “resource material” as the term is used in Korkala but may more properly be defined as part of the “editorial process.” Since the Court of Appeals has not fashioned an editorial process privilege and the Korkala court itself had previously permitted discovery of “editorial process” without comment (Greenleigh Assoc. v New York Post Corp., 79 AD2d 588), it appears that no such privilege exists in this jurisdiction.
*254 Even though discovery of the many facets of the editorial process may indeed, as defendants argue, have a chilling effect upon the free flow of information, this case is not an appropriate one in which to enunciate a privilege barring such disclosure, particularly since the only element of the process now at issue at this early stage in the litigation is the reporter’s drafts.
Accordingly, interrogatory number 16 (b) will not be stricken.
CONCLUSION
The defendants’ motion is granted to the extent that interrogatories numbers 2,15,17,18,19, 22,24 and 25 are stricken. The cross motion is granted to the extent that defendants are directed to serve responses to interrogatories numbers 13 and 16 (b) together with its responses to the remaining interrogatories, if such responses have not been served, within 20 days after service of a copy of the order to be entered hereon.