NICHOLAS M. SANDS, Appellant, v NEWS AMERICA PUBLISHING INC., Doing Business as NEW YORK MAGAZINE, et al., Respondents.

First Department, September 11, 1990

APPEARANCES OF COUNSEL

*Arlene R. Smoler* of counsel *(Jonathan W. Lubell* with her on the brief; *Morrison Cohen Singer & Weinstein,* attorneys), for appellant.

*Slade R. Metcalf* of counsel *(Mark H. Jackson* with him on the brief; *Squadron, Ellenoff, Plesent & Lehrer,* attorneys), for respondents.

## OPINION OF THE COURT

ELLERIN, J.

In this defamation action, plaintiff appeals from the IAS court's denial of numerous discovery requests to which the media defendants objected on various grounds including the Shield Law (Civil Rights Law § 79-h) and the litigation material exception to CPLR 3101.

The underlying action involves an article entitled "The Mob & The Machine", written by the defendant Nicholas Pileggi, which appeared in the May 5, 1986 issue of New York magazine of which defendant News America Publishing Inc. is the publisher. Published at a time of intense publicity regarding corruption scandals in New York City government, the article discussed the purported interrelationship between "organized crime" and the operation of local New York City government. Reporting about the plaintiff, the article stated:

"Agents have also gone back to look at Manes' appointment in 1978 of Dominick Santiago as director of the city's Public Development Corporation, an agency charged with attracting

new industry to New York. Santiago led a remarkable double life, one that in itself epitomizes the close connections between the mob and the machine. As Dominick Santiago, he was Carlo Gambino's godson, ran trucking companies suspected of mob infiltration, and served as president of Independent Local 3108 of the Brotherhood of Carpenters. Also under that name, he was arrested, indicted, and given a six-month federal-court sentence in 1975 for embezzling $500,000 in pension funds. Under the name Nick Sands, however, he became a Democratic state committeeman in the 33rd Assembly District in Queens; he got his Public Development Corporation appointment; he was a fund-raiser for Governor Carey; he became a member of local School Board 24; and he organized a 1979 fund-raiser for Representative Geraldine Ferraro.

"On May 8, 1980, two men opened fire on Santiago/Sands as he left his home in Middle Village, Queens. He was hit nine times, but he survived and has since kept a low profile, according to the Feds. Today, agents are trying to figure out why so little was done to investigate the matter.

"After the shooting, Manes said he was 'shocked' to learn about the background of the man he had appointed: 'He came well recommended as a union president and school-board member and a member of the State Democratic Committee.' "

Plaintiff thereafter commenced the instant action for defamation contending that the article contains certain false and defamatory statements, and that it falsely implies that he is a member of "organized crime" or the "mob". Specifically, plaintiff alleges that he is not Carlo Gambino's godson, that he legally changed his name from Dominick Santiago to Nicholas Sands, in 1967, for independent reasons, and that he does not lead a "double life". While he conceded that he was convicted in 1975 of the crimes of converting union welfare funds to the use of the general fund, filing false reports regarding said funds, and converting funds to his own use, and was sentenced to six months on those charges, he asserts that the amounts involved were significantly lower than the $500,000 specified in the article.

The complaint also alleges that by reason of the injury to his reputation by the distribution of the defamatory article in the Pittsburgh area, he sustained damages when the Board of Commissioners of Allegheny County, Pennsylvania, rescinded a $3,107,160 public works contract awarded to a construction firm in which plaintiff is a principal.

The instant action was commenced in April 1987 and on July 21, 1987, plaintiff served upon defendants an extensive set of interrogatories together with a request to produce documents. Plaintiff's request for interrogatories contained four pages of "instructions and definitions" followed by 49 separate interrogatories, many with multiple subdivisions. While defendants' initial answer to the interrogatories, dated October 9, 1987, provided some of the information sought, objection was raised to the majority of the interrogatories on the grounds that they were "unduly burdensome" or were "attorney work product" or both. While using the phrase "attorney work product", the thrust of the objection was, in fact, material prepared for litigation. Shortly thereafter, defendants served "Supplemental Answers and Objections", dated October 22, 1987, which for the first time raised the Shield Law (Civil Rights Law § 79-h) and the State and Federal Constitutions as additional grounds for objection to all but a few of the previously objected to interrogatories. The only additional information provided by the "Supplemental Answer" was in partial response to interrogatory No. 10 (which sought any material containing statements made by the plaintiff Sands). Defendants' third response to the interrogatories was by way of a letter from defendants' counsel, dated January 21, 1988, which provided certain additional information and again asserted the Shield Law, and for the first time formally raised the "litigation material" exception under CPLR 3101 (d) as an additional basis for objection to the interrogatories to the extent they remained unanswered or only partially answered.

It is the denial of plaintiff's motion to compel defendants to answer those interrogatories that is the subject of this appeal. In denying that motion, the IAS court held that all of the objected to interrogatories seek material protected by both the Shield Law and the "material prepared for litigation rule", without reference to any specific interrogatories or the nature of the information sought beyond briefly noting, in connection with documents containing statements made by plaintiff to third parties, that such statements are not within the purview of CPLR 3101 (e). While plaintiff had alternatively sought a preclusion order with respect to information found to be covered by the Shield Law, such relief was denied without discussion.

Defendants frame the issue before us as one involving interrogatories seeking only documents or information "which

came into the journalist's possession *after* the publication of the Article". While, indeed, most of the material sought does relate to information obtained *post*publication, the record and defendant's own brief make clear that certain prepublication information is also in issue.

Both Pileggi's affidavit in the record and defendants' brief state that in writing the section of the article on Sands, Pileggi spoke with at least seven individuals, including two law enforcement officials who are named, and five other sources, also involved in law enforcement, who were confidential. Yet in responding to interrogatory No. 6, which required identification of all interviews conducted in connection with the preparation of the article, defendants, in their original answer, while objecting to the interrogatory as too broad, expressly stated that "the only two interviews conducted by Pileggi in connection with the preparation of the article as to the portion concerning plaintiff's name are the following:" setting forth the names of two law enforcement officials and further noting that Pileggi may also have spoken to a third named person about plaintiff prior to publication. Despite this seemingly finite response, defendants, in their supplemental answer, included interrogatory No. 6 among those to which objection was asserted both on the basis of the Shield Law and the Federal and State Constitutions. This, of course, is consistent with defendants' present assertion that five confidential sources, beyond those sources specifically named, were relied upon by the writer prior to publication of the article. A similar situation exists with respect to interrogatory No. 8 which expansively requested all documents relating to plaintiff gathered or read by Pileggi *prior* to publication of the article. Defendants' initial response to this request identified specific articles and reports, again seemingly without reservation. However, in the letter from defendants' counsel which constituted the third response to the interrogatories, No. 8 was included among those to which objection was asserted based upon the Shield Law and CPLR 3101 (d). Since that particular request related only to documents prior to publication, it must be assumed that in raising the Shield Law defendants are seeking to protect additional confidential documentation that Pileggi had available at that time. Thus, an issue still exists with respect to prepublication confidential sources and documentation as well as with respect to information obtained subsequent to the article's appearance in print.

We turn first to the issue of the additional prepublication

information which defendants concededly possess beyond that already provided by them in response to interrogatories Nos. 6 and 8.

At the outset, we note that the injunction of CPLR 3101 (a) that there "shall be full disclosure of all evidence material and necessary in the prosecution or defense of an action" has been "interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason". *(Allen v Crowell-Collier Publ. Co.,* 21 NY2d 403, 406.) The stress on broad disclosure is, however, subject to certain limited exceptions among which is that "privileged matter shall not be obtainable" (CPLR 3101 [b]).

■ Clearly, all the information about plaintiff which was known to defendant Pileggi prior to the completion and publication of the article in question would be extremely material and useful to the issues involved herein, such as malice or whether defendants were grossly irresponsible in publishing the portion about Sands, and would ordinarily be discoverable absent some controlling countervailing privilege available to defendants.

Here, defendants assert that the additional prepublication interviews and documentation which they have not turned over were received from confidential sources and are, therefore, by virtue of the Shield Law privileged and nondiscoverable.

Civil Rights Law § 79-h, commonly referred to as the Shield Law, provides that no professional journalist shall be held or adjudged in contempt for refusing or failing to disclose any news or the source of any such news coming into the journalist's possession in the course of gathering or obtaining news for publication or for public dissemination. While the statute itself does not so explicitly state, its protection has been held to extend only to confidential sources or information obtained during the news gathering process. *(Matter of Knight-Ridder Broadcasting v Greenberg,* 70 NY2d 151.) The prepublication confidential information here sought falls directly within the Shield Law's ambit of protection.

No extended discussion is necessary regarding the essential role played by the constitutionally protected free press in our society and the need to cloak that press with exceptional protection because of "the unique role of reporters as purvey-

ors of information to the public and of newspapers as forums for criticism, discussion and debate". *(O'Neill v Oakgrove Constr.,* 71 NY2d 521, 532 [concurring opn, Bellacosa, J.].) While it is essential that the media's quest for information on the broadest scale possible not be impeded by forcing disclosure of its confidential sources, we cannot ignore the rights of the opposing party in litigation who would in the ordinary course, against a nonmedia adversary, have access to that information. In previously reconciling these competing interests, it has been held that although the Shield Law provides an absolute bar to holding a journalist in contempt for refusing to disclose a source, it does not establish "an absolute right" or grant journalists "complete immunity from all legal consequences of refusing to disclose evidence relating to a news source" nor does it "include general exemption from the sanctions authorized by CPLR 3126, most of which function to prevent a party who has refused to disclose evidence from affirmatively exploiting or benefiting from the unavailability of the proof during the pending civil action". *(Oak Beach Inn Corp. v Babylon Beacon,* 62 NY2d 158, 165-166, *cert denied* 469 US 1158.) In fashioning an appropriate remedy in cases involving nondisclosure of sources by newspapers and journalists, it is especially important that the relief granted be no more than is reasonably necessary to protect legitimate interests *(supra,* at 166-167).

In that context, it would appear that the appropriate remedy here, as authorized by CPLR 3126, would be a protective order preventing defendants from using as a sword the information which they are shielding from disclosure. Thus, we hold that defendants should be precluded from introducing into evidence confidential information or documentation known to defendant Pileggi prior to publication of the article, as requested in interrogatories Nos. 6 and 8, unless such information has been disclosed to plaintiff at least 10 days prior to trial.

We turn now to the material and information obtained by defendants *after* the publication of the article which are the subject of the remaining approximately 25 interrogatories which plaintiff claims have not been answered by defendants. Defendants assert the "trial preparation" privilege with respect to almost all of the information sought, as well as the Shield Law.

The qualified trial preparation privilege under CPLR 3101 (d) (2) provides that: "materials otherwise discoverable * * *

and prepared in anticipation of litigation or for trial by or for another party, or by or for that other party's representative * * * may be obtained only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means".

■ The papers before the motion court demonstrated that the postpublication information sought by plaintiff was, in fact, prepared for litigation either by defendants' attorneys or obtained by Pileggi himself for that purpose. Parenthetically, we note that plaintiff's argument that the privilege cannot apply here because Pileggi has indicated that he may subsequently use some of the information for another article is misplaced. Since the primary motivating force for the gathering of the information was the impending litigation, the fact that it may be used for another purpose in the future, not an unexpected consequence when gathered—for whatever purpose—by one who is a journalist, does not impair the statutorily protected reason for which the material was gathered in the first instance and it is at that point that the privilege attaches. *(Cf., von Bulow v von Bulow,* 811 F2d 136, 142, *cert denied sub nom. Reynolds v von Bulow,* 481 US 1015.) Moreover, plaintiff himself emphasizes throughout that Pileggi's primary concern in gathering this information was for purposes of defending this lawsuit.

■ Once a party demonstrates that the requested material was prepared in anticipation of litigation, it is incumbent upon the party seeking disclosure to demonstrate that the stated conditions of the subdivision are met—that is, "substantial need" of the materials in order to prepare his case and that the party can't " 'without undue hardship' " obtain such materials or their " 'substantial equivalent . . . by other means' ". (Siegel, 1985 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3101:29, at 17, 1990 Supp Pamph.)

Plaintiff's showing in that regard was wholly inadequate to override the privilege except with respect to one document. In great measure, the interrogatories in question are overly broad and amorphous seeking limitless information, a typical example being interrogatory No. 24 which requests "all documents which concern, refer or relate to any relationship or connection between Paul Castellano or any other member of organized crime and Gem Fish Co." No showing is made as to

either the need for the particular materials sought by specific interrogatories or the plaintiff's inability to himself obtain such material, much of which consists of public records and publications. Plaintiff's papers did, however, sufficiently establish a substantial need for a copy of the New York City Police Department report regarding a shooting of Sands by two gunmen on or about May 6, 1980. Plaintiff demonstrated that despite repeated efforts, he and his attorneys have been unable to obtain a copy of the report and have been advised by an Assistant Deputy Commissioner of the New York City Police Department that his staff "has been unable to locate a file of the investigation into the shooting". We find that plaintiff's showing on this issue was sufficient to overcome the qualified trial preparation privilege under CPLR 3101 (d) and therefore, we hold that if defendants have a copy, or a summary, of the contents of that report, it is to be made available to plaintiff. In the event defendants do not possess a copy, or summary, of the report, they should so advise plaintiff.

■ Defendants also assert, as a basis for denying disclosure of any postpublication information, the qualified privilege which both the United States and New York State Constitutions extend to reporters *(see, O'Neill v Oakgrove Constr.,* 71 NY2d 521, *supra).* In *O'Neill v Oakgrove Constr.,* an injured litigant sought discovery of photographs of the accident scene from a newspaper and photojournalist who were not parties to the injury lawsuit but who had taken the photographs in the course of their news gathering activities. In denying discovery of the photographs from the nonparty news media, the Court of Appeals held that the reporter's qualified constitutional privilege extends to all materials, both confidential and non-confidential, "prepared or collected *in the course of newsgathering" (supra,* at 524; emphasis added) and can be overcome only by satisfying a very rigorous tripartite test. That privilege, however, would appear to have no application to the instant case where the reporter and magazine are, in fact, parties to the litigation and the information sought was not obtained in the course of news gathering or news preparing activities but rather for the media defendants' own litigation purposes. In that context, the deleterious "practical burdens on time and resources" and "disruption of newsgathering activity" which underlie the reporter's constitutional privilege would not be implicated. *(See, O'Neill v Oakgrove Constr., supra,* at 526-527.)

The final issue before us is plaintiff's contention that he is entitled to "all documents including but not limited to correspondence, memoranda, reports, proposals, tape recordings, tape transcripts, affidavits and grand jury, trial and/or deposition testimony transcripts and paper or magazine articles which contain or comprise statements by Nicholas M. Sands".

Plaintiff relies upon CPLR 3101 (e) which simply states that "A party may obtain a copy of his own statement". This rule enables a party to unconditionally obtain a copy of his or her own statement creating an exception to the rule that material prepared for litigation is ordinarily not discoverable. *(See,* 3A Weinstein-Korn-Miller, NY Civ Prac ¶ 3101.56; *Masone v Paull,* 48 Misc 2d 939.) While the statutory provision appears to speak without limitation, it has frequently been utilized in the context of statements made by one party to the other side or its agents in negligence cases, usually before the party who made the statement had retained counsel. *(See,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3101:46, at 48; *Wilhelm v Abel,* 1 AD2d 55.)

■ However, the right to obtain one's statements under subdivision (e) has not been restricted to negligence actions nor limited only to statements made by the party to the adversary party or its agent. Thus, a party has been held entitled to obtain the statements made by its employees *(Kaye v M & J Assocs.,* 46 AD2d 894; *Saglett v Werner Spitz Constr. Co.,* 65 Misc 2d 883); to a copy of a photograph taken by the adversary party of the scene of the accident at a time when the injured party was unrepresented by counsel *(Saccente v Toterhi,* 35 AD2d 692); to copies of letters written *to* the party by a third person, in a matrimonial action, where the original letters were in the possession of the adversary party *(Anonymous v Anonymous,* 71 AD2d 209); to any statements made by the party in the course of a possible arson investigation although not entitled to the investigative reports themselves *(Ritrovato v Hartford Ins. Group,* 88 Misc 2d 928); to copies of any written summaries of the party's own statements *(Nevins v Del Pezzo,* 94 Misc 2d 86); and to statements which the party made to a nonparty third person, in a taped telephone conversation, in a declaratory judgment action on a trust agreement, where the court noted that under the unrestricted language of subdivision (e) the party was entitled to such statement "so that he may be apprised of its contents in his preparation to meet the issues of the trial" *(Chase v Patron Transmission Co.,* 61 Misc 2d 200, 201). Contrary to defendants' position, as

demonstrated by the foregoing, the right to one's own statements under CPLR 3101 (e) is not limited to negligence actions *(see also, McKenzie v McKenzie,* 78 AD2d 585; *State of New York v Biggane,* 48 Misc 2d 33) and can extend to statements of the moving party made to persons other than the adversary party or its agents provided that such statements are "material and necessary" in the prosecution of the action within the meaning of CPLR 3101 (a).

While defendants acknowledge that they have in their possession material containing "summaries of statements Sands made at one time to parties unrelated to this lawsuit" they resist disclosure of such statements on the ground that Pileggi acquired such information in confidence and from confidential sources which are entitled to the protection of the Shield Law.

Plaintiff argues that the Shield Law applies only when the information involved was obtained under a cloak of confidentiality by a journalist in the course of gathering news for publication and does not apply where, as here, it is obtained by the journalist for purposes of defending this lawsuit. This approach, however, while it mirrors a portion of the statutory language, would be too simplistic under the facts of this case in light of the statute's goal of safeguarding the free channels of news communication. *(Matter of Knight-Ridder Broadcasting v Greenberg,* 70 NY2d 151, *supra.)* Realistically, the relationship which an investigative reporter in a specialized area, such as Pileggi, develops with his confidential sources is a continuing ongoing relationship dependent on mutual trust and reliability which facilitates the reporter's ability to accumulate significant information for ultimate dissemination to the public. While a different situation may prevail in the case of other types of newsgatherers or communicators, it can hardly be gainsaid that to force a reporter in Pileggi's position to disclose his confidential sources or information, for whatever purpose, would be to impair, in some measure, the effectiveness of his future undercover investigative reporting activities.

Here, again, we are confronted with the need to balance the overriding interest in protecting and encouraging the free flow of information to the public *(see, Matter of Beach v Shanley,* 62 NY2d 241) with the strong policy in favor of full disclosure in litigation *(see, Koump v Smith,* 25 NY2d 287; *Troup v Midland-Ross Corp.,* 94 AD2d 949) and the potential rights of a particular litigant to particular information—in this case

his own prior statements as authorized by CPLR 3101 (e), the mere disclosure of which, defendants assert, would result in disclosure of the confidential sources or materials from which they come.

At this stage of the instant action, we find that the policy concerns of the Shield Law and its sensitive free press implications militate in favor of upholding the denial of plaintiff's motion to obtain statements made by him to unspecified third parties, as requested by interrogatory No. 10, in light of the undue breadth of that interrogatory which is without any limitation as to time or subject and covers every possible format and person to whom plaintiff may ever have made a statement. No matter now liberally CPLR 3101 (e) may be construed, the "blunderbuss" approach of interrogatory No. 10 appears designed to obtain widespread discovery of privileged material rather than merely to obtain those of plaintiff's own statements, which are relevant and material to this litigation, as contemplated by subdivision (e).

The foregoing does not mean, however, that plaintiff may not ultimately be entitled to some appropriate relief to prevent defendants "from affirmatively exploiting or benefiting" from the confidential information withheld from plaintiff *(Oak Beach Inn Corp. v Babylon Beacon,* 62 NY2d 158, *supra).* Thus, if it appears that defendants intend to rely on undisclosed statements made by plaintiff to confidential sources in their defense, which defendants have not made available to plaintiff prior to trial, the trial court shall at that time impose a suitable sanction, as authorized by CPLR 3126 *(see, First United Fund v American Banker,* 127 Misc 2d 247, 252) provided that the relief granted for nondisclosure be no harsher than is reasonably necessary to protect legitimate interests *(Oak Beach Inn Corp. v Babylon Beacon, supra).*

Accordingly, the order of the Supreme Court, New York County (Edwards, J.), entered on November 22, 1988 should be modified, without costs, on the law, the facts and in the exercise of discretion, to the extent of directing (1) that defendants be precluded from relying upon or introducing into evidence material from confidential sources not supplied to plaintiff in response to interrogatories 6 and 8 regarding interviews conducted and information gathered and read by defendant Pileggi prior to publication of the article in issue unless such information is provided to plaintiff at least 10 days prior to defendants' proposed use thereof; (2) that defendants provide plaintiff with a copy of the police investigation

report concerning the shooting of Sands on May 6, 1980, or a summary thereof, unless defendants possess no such material in which event they shall serve upon plaintiff a statement to that effect, and the order is otherwise affirmed without prejudice to plaintiff seeking preclusive relief before the trial court, pursuant to CPLR 3126, with respect to any statements made by plaintiff to confidential sources which defendants seek to rely upon in defense of the action.

SULLIVAN, J. P., CARRO and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on November 22, 1988, unanimously modified, without costs, on the law, the facts and in the exercise of discretion, to the extent of directing (1) that defendants be precluded from relying upon or introducing into evidence material from confidential sources not supplied to plaintiff in response to interrogatories 6 and 8 regarding interviews conducted and information gathered and read by defendant Pileggi prior to publication of the article in issue unless such information is provided to plaintiff at least 10 days prior to defendants' proposed use thereof; (2) that defendants provide plaintiff with a copy of the police investigation report concerning the shooting of Sands on May 6, 1980, or a summary thereof, unless defendants possess no such material in which event they shall serve upon plaintiff a statement to that effect, and the order is otherwise affirmed, without prejudice to plaintiff seeking preclusive relief before the trial court, pursuant to CPLR 3126, with respect to any statements made by plaintiff to confidential sources which defendants seek to rely upon in defense of the action.