[682 NYS2d 452]

FRANK DIDOMENICO et al., Appellants, v C & S AEROMATIK
SUPPLIES, INC., Defendant, CA AROMATICS Co., Appellant,
and UNITED PARCEL SERVICE, Respondent.

Second Department, December 28, 1998

## APPEARANCES OF COUNSEL

*Henry Stanziale,* Mineola, for appellants.

*Harrington Ocko & Monk, L. L. P.,* White Plains (*Glenn A. Monk* and *Gloria L. Bisogno* of counsel), for appellant.

*Hunton & Williams,* New York City (*Jeffrey W. Gutchess* of counsel), for respondent.

## OPINION OF THE COURT

FRIEDMANN, J.

The question on this appeal is whether summary judgment should be granted to the plaintiff Frank DiDomenico (referred to as the plaintiff throughout this opinion, as Mrs. DiDomenico's claim is merely derivative), as well as to the codefendant CA Aromatics Co. (hereinafter CA) on its cross claims against the defendant United Parcel Service (hereinafter UPS), the

plaintiff's employer. Summary relief is sought by these parties because the dilatory behavior of UPS in responding to the plaintiff's discovery demands resulted in the wholesale destruction of essentially all of the physical evidence in the case.

We conclude that summary judgment is appropriate under the circumstances because UPS not only disposed of the defective package which had allegedly caused the plaintiff's injuries, but also, with knowledge of the plaintiff's need for the evidence, delayed providing any records until all of the corporate defendants had destroyed their internal documents in accordance with routine retention schedules. As a consequence, the plaintiff has been left without the means of proving his case, and the defendant CA cannot properly defend itself. Because UPS acted with knowledge, with persistence, without explanation or excuse, and in violation of two court orders, its behavior was clearly wilful.

Indeed, it can only be concluded that the determined noncompliance by UPS with the plaintiff's discovery efforts was undertaken to deliberately forestall a third-party action being brought against it. Finally, in addition to the fact that UPS wilfully failed to disclose information that courts have repeatedly found ought to have been disclosed, and refused to obey court orders directing disclosure (CPLR 3126), UPS has acted as a spoliator of evidence. Courts have routinely stricken the pleadings of a "spoliator" whose destruction of proof has resulted in a severe handicap to its opponents, regardless of whether the destruction was wilful or simply negligent.

### FACTS

On December 2, 1991, the plaintiff Frank DiDomenico was employed part time by UPS as a "Metro Unloader" at UPS's facility known as the "Nassau Hub", located at 300 Oak Street in Uniondale. The Hub was an indoor garage where UPS trucks, filled with packages picked up during the day, were emptied at night, and their contents sorted for subsequent delivery. After the laden trucks were brought into the garage, they were backed up into various bays where they remained until they were unloaded.

On the evening of December 2, 1991, the plaintiff was assigned to an unaccustomed bay, where he was to unload packages from several UPS trucks and place the parcels on a nearby conveyer belt. As he unloaded cartons from one of the trucks, the plaintiff noticed seven or eight boxes bearing red "hazardous material" labels. Each box was made of brown cardboard,

was about two feet square, and weighed five to six pounds. The plaintiff noticed nothing unusual about any of the packages, and saw no stains or discoloration on the outside of any of the cardboard casings. He began removing the boxes one by one, placing them "label[-side] up" on the conveyor belt. As the plaintiff picked up the third of these parcels—gripping both sides with his hands, and supporting its weight with at least a few fingers on the bottom—the box caved in, and the plaintiff was squirted in the face and left eye with a caustic liquid. Looking into the now-open box, the plaintiff saw a plastic, "milk bottle type" receptacle, streaming fluid from an aperture at the top. Assisted by his supervisor, Scott Orenstein, the plaintiff hastened to the lavatory to flush out his eye and was then transported to the hospital by ambulance. He did not pause to read the label on the box, and did not ascertain the identity of the shipper in the period immediately following his accident.

Right after the event, Supervisor Orenstein filled out an injury report in which he wrote: "[The plaintiff] grasped a package and did not know it was punctured and the package (which was a haz[ardous] mat[erial]) (ethyl acetate) squirted in his face". Eight days later, the plaintiff filed a workers' compensation claim.

The plaintiff retained a lawyer who, on February 20, 1992, wrote to UPS to request its cooperation with the plaintiff's investigator "in identifying the manufacturer, packer and shipper of this caustic liquid, including shipping orders and other documentation", in order to identify "the parties responsible" for the plaintiff's injuries.

When UPS gave no help to the plaintiff's investigator, he brought on an order to show cause, dated July 31, 1992, for leave, pursuant to CPLR 3102 (c), "to examine records [of UPS] pertaining to a shipment being unloaded by [him], including but not limited to shipping orders, routing slips and any and all memorand[a] relating thereto, to determine the party to sue in a negligence action". The plaintiff also sought to depose a UPS employee who could interpret the various documents. The order to show cause was signed by Justice Edward McCarty on September 11, 1992.

On September 21, 1992, UPS entered into a stipulation with the plaintiff's attorney, according to which the order to show cause was adjourned to October 30, 1992, upon the condition that UPS produce a witness with knowledge who would testify "in full". That witness, identified as Tom Finn, a Customer Service Area Manager, would also "attempt to produce any and

all records referable to the incident", including "delivery receipts, bills of lading, memorandums, and any and all documents" reflecting the identity of the shipper of the ethyl acetate. It was agreed that if the results of Finn's deposition were satisfactory, the plaintiff would withdraw his order to show cause.

On October 19, 1992, Finn appeared for deposition. He knew nothing about the incident and had not searched for any documents relating to the event. According to Finn, UPS kept records of such accidents for 12 to 18 months. Throughout Finn's examination before trial, the plaintiff's attorney repeatedly demanded documents and left spaces for information to be provided. Both Finn and his counsel promised to produce the requested items. These materials included billing records for any ethyl acetate unloaded at the Hub on December 2, 1991, the computer printout of UPS relative to damaged packages unloaded at the Hub on December 2, 1991, the name and address of the shipper of the defective package, any photographs of that package, and the employment status and/or last known address of the plaintiff's supervisor Scott Orenstein. At the end of Finn's examination before trial, the attorney for UPS suggested—"stressing" that he was speaking only "upon information and belief"—that "C and S Aeromatik Supplies" was "the shipper".

On July 7, 1993, the plaintiff's counsel wrote to complain that no executed copy of Finn's deposition transcript had yet been returned, and that none of the material demanded at Finn's examination before trial had been supplied. Although counsel returned Finn's executed transcript later that same month, he indicated that a search for the requested documents was still ongoing. On August 27, 1993, the plaintiff's attorney renewed his requests, but the response by UPS in mid-October 1993 was limited to the names and addresses of Supervisor Orenstein and C & S Aeromatik Supplies, Inc. Otherwise, UPS claimed, its "attempts to secure the documentary evidence requested in [Finn's] examination" were continuing.

On or about August 24, 1993, the plaintiff filed a summons and complaint naming as defendants CA Aromatics Co. and C & S Aeromatik Supplies, Inc. (hereinafter C & S), although it appears that C & S was never served. Among the plaintiff's allegations were negligent packaging, failure to seal, failure to inspect, and failure to warn. At his deposition in September 1995, CA's witness, Elliot Kleinman, testified that CA was in the business of manufacturing and supplying flavors and

fragrances as raw materials to the makers of beverages, candies, liquors, colognes, and perfumes. Although CA did use UPS to ship ethyl acetate in quantities smaller than five gallons, the containers employed for these shipments were cylindrical steel drums which had been fitted with crimped closure spouts and which were sealed within fiberboard cartons. Kleinman further testified to the elaborate paperwork required for such hazardous material shipments. However, all labels, forms, log entries, and notices of leaky and/or damaged packages were kept by CA for only one year and then destroyed. CA first learned of the plaintiff's accident when it received his summons and complaint, at least 18 months after the event, by which time all of its records had been discarded pursuant to routine procedures.

Continuing his efforts to extract information from UPS, on October 28, 1993, the plaintiff's counsel moved to compel UPS to comply with the order to show cause of September 11, 1992 and the stipulation of September 21, 1992. In opposition, the Compliance Supervisor of UPS, Mark Robson, submitted an affidavit in which he averred that all of the requested material (e.g., delivery and pick-up records, damaged package reports, shipping cards, ethyl acetate shipment records, and hazardous material certification sheets) had been destroyed pursuant to the policy of UPS of disposing of such items after one year. UPS denied having had any obligation to supply discovery to the plaintiff, asserting that the material promised at Finn's examination before trial had been "gratuitously" volunteered. Finally, UPS claimed still to be looking for certain hazardous material reports that the Federal Government required it to keep for two years. By order dated May 2, 1994, the Supreme Court, Nassau County, directed UPS to conclude its search "in an expeditious manner" and to produce within 30 days any documents not yet destroyed.

Meanwhile, on February 16, 1994, the plaintiff amended his complaint to name UPS as a direct party defendant. He asserted that, with UPS's actual knowledge of the plaintiff's need for certain evidence in its possession, UPS had destroyed that evidence and had deliberately impaired its employee's ability to sue a third party, in order "to protect itself from being sued as a third party defendant". The plaintiff also demanded punitive damages.

At his deposition on April 3, 1995, Mark Robson, now described as a UPS Safety Supervisor, reiterated his belief that essentially all of the material that the plaintiff was

demanding had been destroyed on or before December 2, 1992. However, Robson admitted that he had not searched the records of UPS's regional or corporate offices, where duplicate copies of all Hazardous Material Incident Reports were routinely filed. Robson had been told that C & S was the shipper by his immediate supervisor at UPS, Tom Brennan, although Robson did not know where Brennan had gotten this information. Robson, like Finn, testified that there was a specific UPS procedure for handling damaged packages in 1991, although neither man could say exactly what that procedure was. Robson suggested that after a leaking carton containing hazardous material had been inspected and all of the requisite paperwork had been filled out, the parcel would be "disposed of right away".

When UPS failed to supply some 17 items that had been demanded in the course of Robson's deposition on May 31, 1996, the plaintiff's counsel served it with a notice for discovery and inspection. In its response dated September 26, 1996, and its supplemental response dated October 23, 1996, UPS replied that none of the documentation demanded by the plaintiff was still in existence except for the "Chain of Command policy" of UPS, which had nothing to do with the subject package. UPS further maintained that Tom Finn was no longer a UPS employee, and it identified the shipper as Citrus Allied Aromatics Company—although it did not explain how this identification had been arrived at.

On May 7, 1997, the plaintiff moved to strike UPS's answer pursuant to CPLR 3126 and for summary judgment under CPLR 3212. In an accompanying affidavit, the plaintiff's supervisor, Scott Orenstein, averred that after the plaintiff's accident, Orenstein had examined the faulty package and noted that the return address on the "Ethyl Acetate" label read "Citrus Allied" or "CA Aromatics Co.". He believed that it was only subsequent to the plaintiff's accident that CA began shipping its products in metal containers. In addition to preparing the accident report, Orenstein had promptly notified UPS's Hazardous Material Response Team, whose duty it was to prepare a "Spillage Report" identifying the shipper, assessing the damage, and indicating the cause of the spill as well as whose fault it was. It was also up to the Team to notify the appropriate Federal agencies and the Department of Transportation. Thereafter, the Team was supposed to "retain the product and its contents" and "notify the shipper" regarding the problem with its package.

CA cross-moved for summary judgment against UPS on its cross claims, arguing that UPS had recklessly and maliciously

done away with evidence that would have exonerated CA. In consequence, CA argued, it was entitled to indemnification from UPS for any damage to the plaintiff for which CA might be found liable.

UPS opposed these applications with, *inter alia*, an affidavit from manager Tom Finn, who was in fact still employed by UPS. Among other things, Finn denied having been asked by UPS's counsel to locate any documents either before, during, or after his deposition. In an accompanying affirmation, counsel added, without reference to any case law, that it was the plaintiff's own fault that UPS had destroyed its documents because his attorney had not moved fast or forcefully enough to compel their preservation. She further urged that CA might be withholding inculpatory evidence. Finally, counsel cited an allegedly confidential workers' compensation interview with a former UPS "Rewrap Supervisor" named Tim Waring. According to counsel's summary (Waring's actual statement was not supplied), Waring had told the workers' compensation carrier that the shipper of the carton that had caused the plaintiff's injury was "C & S Aromatic Supply". Purportedly, Waring had also "re-wrapped the [damaged] package and sent it [back] to the addressee" immediately after the plaintiff's accident.

In its order of October 14, 1997, the court denied the plaintiff's motion and CA's cross motion, finding, *inter alia*, that the plaintiff might yet be able to prove his case by using the statements of Orenstein and Waring. The court also ruled that there was no "conclusive proof that evidence was willfully discarded or destroyed" by UPS, so that the severe sanctions of CPLR 3126 were not "appropriate". We disagree and reverse.

ANALYSIS

## I. CPLR 3126 penalties are applicable to UPS under the circumstances of this case:

■ CPLR 3126 provides that a court may, in its discretion, impose a wide range of penalties upon "a party" which either (a) "refuses to obey an order for disclosure" or (b) "wilfully fails to disclose information which the court finds ought to have been disclosed". The penalties proposed by the statute include (1) deciding the disputed issue in favor of the prejudiced party, (2) precluding the disobedient party from producing evidence at trial on the disputed issue, or (3) either striking the pleadings of the disobedient party, or staying the proceedings until the ordered discovery is produced, or rendering a default judg-

ment against the disobedient party. The statute's proposed penalties were not intended to be exhaustive. The Practice Commentaries to CPLR 3126 encourage the courts to exercise their ingenuity, and to devise sanctions as narrowly tailored as possible to the circumstances of the individual case. However, the Commentaries support striking a party's pleading when the "refusal" to supply discovery is so "pervasive" that it in effect precludes an opponent from making out his action or defense (see, Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3126:7, C3126:8, at 757-760). Generally, the penalties authorized by CPLR 3126 are designed " 'to prevent a party who has refused to disclose evidence from affirmatively exploiting or benefiting from the unavailability of the proof during the pending civil action' " (Sands v News Am. Publ., 161 AD2d 30, 37).

Clearly, on the facts of this case, it is appropriate to strike the answer of UPS and cross claims against CA under CPLR 3126 (3).

(a) UPS refused to obey two court orders for disclosure.

UPS was a party respondent to the plaintiff's order to show cause, signed on September 11, 1992, which directed it, inter alia, to produce all records relative to the instant incident. In response, and in exchange for the plaintiff's postponement of the order to show cause, UPS produced Finn for deposition. This witness knew nothing about the incident and had not performed any document search. UPS remained delinquent in supplying the discovery that had been originally demanded by the plaintiff, then ordered by the court, then agreed to by stipulation, and finally promised during Finn's examination before trial.

In addition, after the plaintiff had joined UPS as a direct party defendant in his amended complaint of February 16, 1994, the Supreme Court, Nassau County, by order dated May 2, 1994, gave UPS 30 days to disclose all requested items still in existence. However, the next response by UPS to the plaintiff's demands—in which it declared that everything the plaintiff had requested had been destroyed—was in September 1996, almost two and one-half years later. Accordingly, UPS was a party to the main lawsuit when one of the court orders directing discovery was obtained by the plaintiff and disobeyed by UPS.

The sanctions of CPLR 3126 are not foreclosed by the decision of the Court of Appeals in Oak Beach Inn Corp. v Babylon Beacon (62 NY2d 158, cert denied 469 US 1158). In the Oak Beach Inn case a newspaper refused to divulge to the plaintiff

the name of the person who had written an allegedly defamatory letter to the editor that it had published, thereby preventing the plaintiff from suing the author directly for libel. In ruling that CPLR 3126 sanctions were not available against the newspaper for its disobedience of a discovery order issued under CPLR 3102 (c), the Court of Appeals ruled, in conformity with the wording and intention of the statute, that the penalty imposed by the motion court (the striking of the defendant newspaper's answer) was too severe for the infraction and the actual damage caused thereby, as well as violative of the public policy that protects the press and its sources. Central to the Court's analysis was its concern that a newspaper not be punished for its legitimate invocation of the so-called "Shield Law" (Civil Rights Law § 79-h) according to which the press can shield its sources without being held in contempt, and, by logical extension, without being subject to the even more extreme sanction of a default judgment under CPLR 3126.

In the course of its discussion, the *Oak Beach Inn* Court remarked that generally the real parties in interest when press sources are sought to be protected are the individual journalists. That is, it is usually an individual journalist to whom an anonymous informant confides his newsworthy story, and ultimately it is the journalist who, if forced under threat of sanctions to identify his sources, will be exposed to "legal, and possibly illegal, risks" (*Oak Beach Inn Corp. v Babylon Beacon, supra*, at 168). However, as a rule, as in the *Oak Beach Inn* case itself, such individual journalists are "nonparties" to a plaintiff's CPLR 3102 (c) application. Under the circumstances, the Court declared that because CPLR 3126 provides for draconian penalties only against a "party", "the basic policy of the Shield Law would be undermined if CPLR 3126 were not strictly read to accord journalists [nonparty] status" (*Oak Beach Inn Corp. v Babylon Beacon, supra*, at 168). However, unlike the *Oak Beach Inn* case, this is not a case in which the freedom of the press is at stake. Nor is this a case in which the safety of persons behind the scenes would be jeopardized by a strict enforcement of the statute as written.

CPLR 3126 applies by its terms to "any party", and UPS was a party respondent to the plaintiff's original order to show cause under CPLR 3102 (c), as well as a party defendant to the main action at the time the disclosure order dated May 2, 1994 was issued. In contrast to the newspaper and/or the journalists in the *Oak Beach Inn* case, the respondent on this appeal does not qualify for any special protection from the reach of CPLR

3126. UPS has not raised a statute like the Shield Law or any public policy concern that could justify its refusal to provide the disclosure twice ordered by the court. Indeed, at no time has UPS given any reason or excuse for its disobedience.

In addition, to condone the behavior of UPS would be to undermine the public policies that govern the fair conduct of litigation, including the free exchange of information and the duty of obedience to court orders. It is not uncommon for an employee to seek CPLR 3102 (c) discovery from his employer in order to ascertain whom he should sue following a work-related accident. According to the interpretation by UPS of the *Oak Beach Inn* case and CPLR 3126, an employer can spare itself the inconvenience of an impleader by the simple expedient of first concealing and then destroying all of the evidence that might support its employee's claim against a third party. If the employee does not know whom to sue, the employer can never be brought into the suit. This is not what the *Oak Beach Inn* Court intended. Among other distinguishing factors, the *Oak Beach Inn* case did not involve the destruction of evidence. The newspaper defendant therein merely insisted that it had the right to not identify a "source". Accordingly, contrary to the Supreme Court's ruling at bar, the *Oak Beach Inn* decision does not exempt UPS from CPLR 3126 sanctions because its "destruction [of evidence] occurred before UPS was a party" to the lawsuit for which the evidence was sought. Furthermore, the plaintiff in the *Oak Beach Inn* case was neither divested of the substantive evidence with which to prove his libel claim nor deprived of any responsible defendant by the newspaper's refusal to obey the court's disclosure order. Indeed, that plaintiff had the full text of the published letter, and, if he could convince a jury that it was defamatory, he could be amply compensated for his damages by the defendant newspaper, which was jointly and severally liable with the anonymous author. Here, by contrast, UPS destroyed all of the evidence that could have identified the shipper, while it has claimed for itself the protection from personal injury liability afforded by the Workers' Compensation Law. The stratagem of UPS therefore leaves the plaintiff without any remedy against anyone.

(*b*) The failure of UPS to disclose was wilful.

UPS also "wilfully" failed (CPLR 3126) to disclose duly demanded information, which several courts have now found ought to have been disclosed pursuant to duly served requests. That is, the plaintiff wrote letters, served notices of discovery and inspection, and demanded during depositions all manner

of documentary materials from UPS, which legitimate requests UPS consistently ignored. Courts have ruled that it is appropriate to strike a defendant's answer where its failure to comply with discovery demands is wilful, contumacious, or in bad faith. Generally, "wilfulness" can be inferred from a party's repeated failure to respond to demands and/or to comply with disclosure orders, coupled with inadequate excuses for its defaults (*see, e.g., Frias v Fortini,* 240 AD2d 467; *Kubacka v Town of N. Hempstead,* 240 AD2d 374; *Herrera v City of New York,* 238 AD2d 475; *Porreco v Selway,* 225 AD2d 752; *DeGennaro v Robinson Textiles,* 224 AD2d 574; *cf., Harris v City of New York,* 211 AD2d 663, 664; *Lestingi v City of New York,* 209 AD2d 384). As noted, UPS has for years resisted the plaintiff's requests for disclosure, has disobeyed court orders, and has failed to offer any excuse for its defaults.

Where a noticed party discards evidence without moving for a protective order, a "negative inference" may be drawn that the destruction was deliberate (i.e., "wilful") (*see, e.g., Anteri v NRS Constr. Corp.,* 117 AD2d 696; *Ricco v Deepdale Garden Apts. Corp.,* 113 AD2d 822; *Hyosung [Am.] v Woodcrest Fabrics,* 106 AD2d 298). As this Court wrote in *Ferraro v Koncal Assocs.* (97 AD2d 429, 429-430): "Although a showing that it is impossible to make [a] particular disclosure will bar the imposition of a sanction under CPLR 3126, a contrary rule prevails where the disobedient party is responsible for making a previously possible disclosure impossible. Where a party deliberately destroys evidence, the penalties of CPLR 3126 may be applied * * * Defendant omitted to disclose any details regarding the discarding of the [evidence], although it was the only party with exclusive knowledge of such information * * * From the fact defendant did not promptly move, upon receipt of the plaintiffs' disclosure notice, for a protective order, pursuant to CPLR 3103, a negative inference can be drawn that the [evidence] was discarded after defendant's receipt of said notice. Defendant's failure to proffer an exculpatory explanation for its role in the destruction of highly material and relevant evidence combined with [other postponements of its compliance with plaintiffs' discovery requests], indicates that the defendant engaged in conduct which was deliberately dilatory, evasive, and obstructive with respect to plaintiffs' discovery rights. Such willful and contumacious conduct warrants the imposition of [a sanction] pursuant to CPLR 3126".

## II. The answer of UPS should have been stricken and its cross claims dismissed because of its spoliation of all of the physical evidence.

■ Separate and apart from CPLR 3126 sanctions is the evolving rule that a spoliator of key physical evidence is properly punished by the striking of its pleading. This sanction has been applied even if the destruction occurred through negligence rather than wilfulness, and even if the evidence was destroyed before the spoliator became a party, provided it was on notice that the evidence might be needed for future litigation (*see, e.g., Kirkland v New York City Hous. Auth.*, 236 AD2d 170 [dismissal of third-party action appropriate where crucial evidence was negligently destroyed]; *accord, Healey v Firestone Tire & Rubber Co.*, 212 AD2d 351, *revd on other grounds* 87 NY2d 596; *Vaughn v City of New York*, 201 AD2d 556; *see also, Squitieri v City of New York*, 248 AD2d 201). To quote *Squitieri v City of New York* (*supra*, at 203), "[s]poliation sanctions * * * are not limited to cases where the evidence was destroyed willfully or in bad faith, since a party's negligent loss of evidence can be just as fatal to [an]other party's ability to present [a case or] a defense" (*see also, Mudge, Rose, Guthrie, Alexander & Ferdon v Penguin Air Conditioning Corp.*, 221 AD2d 243 [dismissal of complaint warranted where plaintiff negligently lost key piece of evidence before defendants could examine it]).

Here, UPS destroyed the package that caused the plaintiff's injury, as well as all of the records that might have identified the culpable party. In addition, its delay in responding to the plaintiff's discovery demands resulted in CA's routine destruction of its own shipping records. The plaintiff was therefore left without the means to prove his case, while CA could not properly defend itself. Where, as here, one party has destroyed critical physical proof, such that its opponents are " 'prejudicially bereft of appropriate means to [either present or] confront a claim with incisive evidence' ", the spoliator's pleading is properly stricken in order to obviate a trial that is " 'based on rank "swearing contests" ' " (*Kirkland v New York City Hous. Auth., supra*, at 174, quoting Hoenig, Products Liability, *Impeachment Exception, Spoliation Update*, NYLJ, Apr. 12, 1993, at 6, col 5).

The plaintiff is therefore entitled to summary judgment on his common-law cause of action against his employer for impairing his right to sue a third-party tortfeasor (*Vaughn v City of New York*, 201 AD2d 556, *supra; Coley v Arnot Ogden Mem. Hosp.*, 107 AD2d 67; *Weigl v Quincy Specialties Co.*, 158 Misc 2d 753). The defendant CA has likewise established its entitlement to summary judgment on its claim for full

indemnification from UPS, because UPS is responsible for the destruction of all of the evidence by means of which CA might have defended itself against the plaintiff's allegations (*Kirkland v New York City Hous. Auth., supra*).

Accordingly, the order is reversed insofar as appealed from, on the law, the plaintiff's motion to strike the answer of UPS and for summary judgment against that defendant is granted, and CA's cross motion for summary judgment on its cross claims against UPS and dismissing the cross claims of UPS against it is granted.

MILLER, J. P., PIZZUTO and GOLDSTEIN, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, the plaintiffs' motion to strike the answer of the defendant United Parcel Service and for summary judgment against that defendant is granted, and the cross motion of the defendant CA Aromatics Co. for summary judgment on its cross claims against the defendant United Parcel Service and dismissing the cross claims of the defendant United Parcel Service against it is granted.