OPINION OF THE COURT
Martin M. Solomon, J.
*849 The instant matter presents an unfortunate tragedy of errors. The action arises out of the mistaken destruction of a vehicle, in which plaintiffs were severely injured, in violation of an order of the Supreme Court of Kings County to preserve the vehicle.
The complaint alleges that, on October 9, 2003, plaintiff Castalia Ortega purchased a used 1987 Ford Suburban from an identified individual. This court takes notice that Ford does not and did not manufacture the Suburban. The vehicle is identified in the submissions alternatively as a Ford Suburban and a Ford Aerostar. The extent to which confusion regarding the identity of the vehicle in question contributed to its loss is not addressed in the submissions by any of the parties.
The complaint alleged that, on October 10, 2003, Ms. Ortega took the vehicle to a licensed service station to perform an inspection and “tune up” the vehicle. The service station is not identified in any of the submissions, nor is the work performed on the vehicle specifically delineated or whether the vehicle, in fact, passed the inspection.
On October 11, 2003, while driving on the southbound side of Ocean Parkway, the vehicle caught fire. Both plaintiffs suffered severe burn injuries. Subsequently, the vehicle was towed away by Ridge Transportation Services, Inc., a company that was under contract with the City of New York.
Plaintiffs’ attorney attempted to inspect the car, but Ridge Transportation allegedly would not let him have access to the vehicle. In an affidavit submitted in connection with the order to show cause, plaintiffs’ counsel avers that “they would not release the vehicle to my client without showing title or a bill of sale. As my client is not the owner of the vehicle, he cannot provide this.” An order to show cause was issued, on behalf of plaintiff Peralta only, by another justice of this court, erroneously dated November 31, 2003. The court takes notice that November 31 is a nonexistent date. The order contained a stay on, inter alia, disposing of the vehicle pending the hearing of the motion. On October 31, 2003, the City of New York was served with the order to show cause.
The order to show cause was returned on November 17, 2003, before the Honorable Gerald Rosenberg, who was not the initial justice on the order to show cause, and an order was issued, without opposition, ordering the New York City Police Department and Ridge Transportation Services, Inc. to preserve the vehicle and permitting plaintiffs’ representatives to inspect, *850 photograph and videotape the vehicle for a 60-day period which commenced on November 18. This order was also issued on behalf of plaintiff Peralta only, who was the sole named petitioner in the proceeding.
It appears from a letter from Ruby Maria, Special Counsel to the Deputy Commissioner for Legal Matters of the New York City Police Department, dated November 17, 2004, nearly one year after the events described therein, that on or about November 7, 2003, the New York City Police Department took possession of the vehicle from Ridge Transportation and stored it at the New York City Police Department College Point Pound Facility in College Point, Queens. Ms. Maria’s letter states that a copy of “the” court order was faxed by the Police Department Legal Bureau to the College Point Pound on November 17, 2003. It is unclear which order this references. The letter also notes two memos sent from the Legal Bureau to the College Point Pound, apparently annexed to the submissions as exhibit I. The memos are dated November 17, 2003 and November 24, 2003; the former is in reference to the order to show cause and the latter in reference to the order of November 17. Both memos state that the order prohibits, inter alia, disposing of the vehicle identified as a 1997 or 1987 Ford Aerostar, VIN No. 1FMCA11U2H2BG9649. It is worth noting that the VIN number is not otherwise identified in the submission other than a handwritten notation on the police report in which the “G” may be a “6.”
While Ms. Maria’s letter makes references to plaintiffs’ counsel’s “valiant efforts” to locate the vehicle, curiously absent from the submission is any first person account from counsel as the efforts which he actually made and, more importantly, when he made them. It appears that Ms. Maria was not personally involved in efforts counsel made until sometime in January of 2004, which may or may not have been within the 60-day period contained in the order of November 17, 2003.
It appears that the failure to preserve the vehicle was negligent and wholly inadvertent. According to Ms. Maria’s letter, the College Point Pound was never aware of the order to preserve the vehicle. Notices were sent by the pound, pursuant to statute, in the ordinary course of business, to plaintiff Ortega and to the individual who had sold her the vehicle, which advised them that the vehicle was to be destroyed if left unclaimed. When neither of these individuals responded, the vehicle was sold as scrap and crushed on December 30, 2003.
*851 Plaintiffs commenced the instant action for spoliation of the evidence and contempt. In regard to the spoliation claim plaintiffs assert that because of the wrongful destruction of the vehicle they “are unable to inspect the vehicle or have an engineer determine what caused the vehicle to burst into flames” and as a result the City’s actions have “completely eliminated the capacity for the plaintiffs to successfully sue the responsible entities for negligence, breach or [szc] warranties or strict products liability due to the accident.” In connection with the cause of action for contempt the plaintiffs allege that defendant intentionally violated the court’s order and that the failure to obey the order was “calculated to and has defeated, impeded, impaired and prejudiced the rights and remedies of the plaintiff []”
Plaintiffs submit the affidavit of Donald R. Phillips, RE., a professional engineer and accident reconstruction expert. Mr. Phillips asserts, inter alia, that his inability to do a physical inspection of the vehicle “is a fatal obstacle in determining the cause of the fire . . . As a result, there is no way the plaintiffs could successfully pursue a lawsuit for defective design, defective manufacture, or negligent maintenance of the vehicle, against any party.”
Defendant submits the affidavit of John McManus, EE., a professional engineer with experience in automotive engineering. Mr. McManus asserts that, even with an inspection of the vehicle, often the cause of the fire cannot be determined and that a consideration of other evidence may develop circumstantial evidence as to the cause of the fire. Mr. McManus concludes that “[i]t is speculative to assert that inspection of the vehicle after a fire would necessarily lead to any determination as to the cause of the fire.”
It is worth noting that plaintiffs make little effort to identify the likely defendants and possible claims that might have been available to them had the vehicle been made available for inspection. There is nothing to suggest that the vehicle had been the subject of recalls or was noted in any media reports for similar incidents. There is nothing in the submissions that suggests the seller of the vehicle made any express warranties. Finally, as to the “licensed mechanic,” this individual or entity is not identified and the work performed is outlined in only the most general terms.
Clearly, this sparse record raises more questions than it answers. These include, but are not limited to: the extent to *852 which confusion regarding the make and model of the vehicle contributed to its loss; the actual efforts plaintiffs’ counsel made to examine the automobile, which would have included obtaining the bill of sale or certificate of title from his client Ortega; what he was prepared to do had he gained access to the vehicle; the date on which plaintiffs first retained the services of their expert; what viable cause of action plaintiffs might have had and against whom and the actual impact of loss of the vehicle on plaintiffs’ ability to prosecute such claims. The record also raises issues concerning the appropriateness and propriety of counsel’s continued representation of both plaintiffs, one of whom is the alleged owner/driver of the vehicle and the other the passenger, and whether, in fact, counsel’s testimony may be essential to prove elements of the claim.
Finally, while it is not disputed that there was a court order permitting plaintiffs’ counsel and experts to inspect and photograph the vehicle and for the City to preserve the vehicle and that the vehicle was destroyed, nearly all of the underlying details concerning this are contained in the unsworn letter of March 17, 2004 from the Special Counsel to the Deputy Commissioner of Legal Matters of the Police Department. While it is likely that the Special Counsel had speaking authority on behalf of the City, neither party has seen fit to brief the point. It is not clear the extent to which the facts contained in the letter, including those obviously based on hearsay, represent extrajudicial or judicial admissions on the part of defendant.
In the instant motion, plaintiffs move for summary judgment as to liability on the causes of action for spoliation and contempt of court. An initial issue before this court is whether, on these facts, the plaintiffs may proceed with an independent cause of action against the City for spoliation of evidence or contempt. Neither cause of action has been clearly recognized within this jurisdiction.
Historically, New York courts have not recognized an independent cause of action for spoliation against third parties. Indeed, in many instances, third-party spoliation goes unpunished in New York. (See Killelea, Spoliation of Evidence: Proposals for New York State, 70 Brook L Rev 1045 [2005].)
Recognition of spoliation of evidence as an independent tort is a recent and evolving theory of liability. It is an outgrowth of discovery practice in which a sanction is directed against a person or entity that is a party to an ongoing action for failure to preserve evidence that is important to an adversary. In con *853 nection with discovery practice, “[t]he Supreme Court has broad discretion in determining the appropriate sanction for spoliation of evidence.” (De Los Santos v Polanco, 21 AD3d 397, 397 [2d Dept 2005].)
The independent tort action for spoliation is essentially an extension of discovery practice to a nonparty. In effect, it punishes a nonparty for destruction of evidence essential to a party. One of the great difficulties with recognition of the tort is fashioning the remedy to address the wide range of conduct covered by the tort, in effect, replicating the discretion given the court to determine the gravity and appropriate sanction for spoliation by a party as a discovery abuse.
An important development in this area of law in this jurisdiction is marked by DiDomenico v C & S Aeromatik (252 AD2d 41 [2d Dept 1998]). In DiDomenico, the plaintiff was injured while working as a UPS employee when a caustic liquid squirted out of a package he was unloading from a truck. Plaintiff attempted for two years to obtain preaction discovery from his employer regarding, inter alia, the origins of the package; a year and a half of that effort was by way of a special proceeding in which various discovery orders were entered. Eventually, having failed to obtain the discovery, plaintiff brought an action against the two companies that were the most likely source of the package, and subsequently amended the complaint to add a claim against UPS, his employer, alleging that UPS had destroyed evidence deliberately to impair plaintiffs ability to sue the third party so as to protect itself from being brought in as a third-party defendant.
DiDomenico’s efforts to obtain discovery from UPS continued unsuccessfully for three more years, at which time plaintiff moved to strike the answer of UPS. The trial court denied the motion. The Second Department reversed. It is quite clear that the Second Department found the destruction of the evidence by UPS to have been willful and deliberate, indeed, contumacious, in that it required the striking of the answer in the spoliation action.
The Second Department did not specifically address the existence of an independent cause of action for spoliation, while finding for the plaintiff upon that cause of action. A logical extension of the Court’s reasoning suggests that spoliation by an employer may stand on a different footing than third-party spoliation in other circumstances. It is reasonably foreseeable that an employer will be brought in as a third-party defendant *854 should a plaintiff employee be able to properly develop the primary action and, thus, the spoliation bears more relation to a discovery abuse by an as yet to be named party than to an independent tort. This is particularly apparent when the spoliation is deliberate and done with the intention of defeating plaintiffs ability to proceed with the main action.
The Second Department, however, extends the law beyond the issue of a discovery sanction when the Court states:
“Separate and apart from CPLR 3126 sanctions is the evolving rule that a spoliator of key physical evidence is properly punished by the striking of its pleading. This sanction has been applied even if the destruction occurred through negligence rather than wilfulness, and even if the evidence was destroyed before the spoliator became a party, provided it was on notice that the evidence might be needed for future litigation (see, e.g., Kirkland v New York City Hous. Auth., 236 AD2d 170 [dismissal of third-party action appropriate where crucial evidence was negligently destroyed]; accord, Healey v Firestone Tire & Rubber Co., 212 AD2d 351, revd on other grounds 87 NY2d 596; Vaughn v City of New York, 201 AD2d 556; see also, Squitieri v City of New York, 248 AD2d 201). To quote Squitieri v City of New York (supra, at 203), ‘[spoliation sanctions . . . are not limited to cases where the evidence was destroyed willfully or in bad faith, since a party’s negligent loss of evidence can be just as fatal to [an]other party’s ability to present [a case or] a defense’ (see also, Mudge, Rose, Guthrie, Alexander & Ferdon v Penguin Air Conditioning Corp., 221 AD2d 243 [dismissal of complaint warranted where plaintiff negligently lost key piece of evidence before defendants could examine it]).” (Id. at 53.)
The Court of Appeals has recently limited the areas into which they are willing to consider extension of the independent cause of action for spoliation. In MetLife Auto & Home v Joe Basil Chevrolet (1 NY3d 478, 480-481 [2004]), the lead decision on the issue, the Court stated that “[t]he primary issue is whether New York should recognize a cause of action for third party spoliation of evidence and impairment of a claim or defense as an independent tort.” The Court found that the facts in that case did not warrant the recognition of spoliation as an independent tort and highlighted the fact that there was no court order by *855 the plaintiff to preserve the vehicle. The Court also referred to a line of cases in which the spoliator was not on notice of an impending or contemplated lawsuit, and there was no relationship giving rise to a duty, and there was no court order or written agreement. (Id. at 484.) (It is worth noting that the special relationship in DiDomenico was that of employer-employee and there was a series of court orders in the matter.)
In MetLife, the Court noted: “[T]he case at bar is substantially different from DiDomenico in that at no time did MetLife seek or obtain a court order to compel the preservation of the vehicle.” (Id. at 483.)
The facts in this case are similar to DiDomenico and different from MetLife in that crucial aspect. There was a court order, in fact two court orders, counting the order to show cause, which directed the preservation of the vehicle. Moreover, it appears that the City was on notice of at least one, if not both, of those orders a sufficient time prior to the destruction of the vehicle that it would not be unreasonable to require it to comply with the mandate of these orders.
The Court of Appeals leaves open the issue of recognition of an independent tort of spoliation. The situations noted in MetLife giving rise to a duty on the part of the spoliator to preserve the evidence, by written contract, special relationship or court order, may fairly readily be subsumed, however, under other theories of action, such as breach of contract or promissory estoppel, breach of fiduciary duty or by way of a contempt proceeding. While actions under each of these theories suffer from difficulties of their own in redressing the wrong, they avoid the many nearly insoluble problems endemic to an action for spoliation.
The problematic nature of the tort of spoliation becomes apparent when one considers the wide range of situations that it covers. From the routine purging of records that might have some bearing on a distant lawsuit that has yet to be contemplated to the deliberate destruction of evidence known to be essential, done with the intent to delay, diminish and defeat the ongoing litigation of an inevitable adversary, the conduct covered by the rubric of a spoliation claim is more than far-reaching.
Indeed, a subsequent repair, adaption or even use of an item by its rightful owner might well fall within the conduct covered by the tort. The range of conduct is virtually endless. In this regard, see for example Hibbits v Sides (34 P3d 327 [Sup Ct *856 Alaska 2001] in which plaintiffs, motorcycle riders involved in an accident with a pickup truck, alleged that a state trooper’s removal of the driver from the scene of the accident was an intentional spoliation of evidence of the truck driver’s marijuana use, while the trooper asserted that he removed the driver to protect him from threats from drunken Hell’s Angels at the scene of the accident.
The courts that have addressed these issues have limited the expansion of the tort’s liability by requiring a plaintiff to establish that the spoliator had a legal or contractual duty to preserve the evidence. Often tjiese courts have noted that as a general rule, a person or entity has no duty and can use and dispose of its property as it sees fit and that it is only under certain enumerated circumstances that a duty to refrain from spoliation arises. Indeed, the Court of Appeals has done this in MetLife.
More problematic to the tort are the issues of causation and damages, which, to a greater or lesser degree, are inherently intertwined. The causation element necessarily involves a determination as to the utility of evidence that no longer exists and its likely impact on a litigation, a difficult and speculative determination, at best.
At a minimum, the courts that have considered this have required plaintiffs to establish two elements of causation: the first being the causal relationship between the loss of the evidence and the impairment of the case, or defense, and the second being some measure of the likelihood that the aggrieved party would have been successful in their claim had the evidence been available.
“A third-party spoliator should not be forced to pay damages to a plaintiff who had only a frivolous underlying claim. Thus, some threshold showing of causation and damages is required.” (Oliver v Stimson Lbr. Co., 297 Mont 336, 350, 993 P2d 11, 20 [1999].)
This causation element has had various incarnations from the courts that have reviewed it. From the relatively harsh standard imposed by the Florida Supreme Court, that plaintiff has the burden to show an inability to prove a case without the destroyed evidence (Continental Ins. Co. v Herman, 576 So 2d 313, 316 [Fla 1990]), to the relatively mild standard set by the Supreme Court of Montana in Oliver (supra, 297 Mont at 348, 993 P2d at 19), that plaintiff must show a significant possibility of success of the potential civil action if the evidence were avail *857 able. The Montana court noted that this standard was a lower standard than a preponderance of the evidence. (297 Mont at 350, 993 P2d at 21.)
Damages also present some serious potential problems. At least one court that considered this arrived at an interesting solution. The Oliver court held that “damages arrived at through reasonable estimation based on relevant data should be multiplied by the significant possibility that the plaintiff would have won the underlying suit had the spoliated evidence been available.” (297 Mont at 351, 993 P2d at 21.) The example given by the court, however, shows that the award is, in fact, reduced by the percent that the finder of fact finds as a litigation risk to plaintiffs success. (See also Holmes v Amerex Rent-A-Car, 710 A2d 846 [DC App 1998].) One can only wonder how such a determination by a jury of lay people can be anything but wildly speculative, given that even seasoned trial jurists can only venture an educated estimate on the issue, and the extent to which expert testimony would be necessary and admissible on the issue.
The Court of Appeals in MetLife made note of the difficulty in ascertaining damages in that case. Yet, MetLife was a subrogation action under a homeowner’s policy for fire damage to a home, a case in which the actual damages should not have been difficult to assess.
Given the many difficulties inherent in recognition of the tort, many jurisdictions that have considered adoption of the tort of spoliation have rejected it. For example, the Supreme Court of California, in well-reasoned decisions, rejects the tort where there has been an intentional spoliation by a party (Cedar-Sinai Med. Ctr. v Superior Ct., 18 Cal 4th 1, 954 P2d 511 [1998] ), or intentional spoliation by a nonparty (Temple Community Hosp. v Superior Ct., 20 Cal 4th 464, 976 P2d 223 [1999] ). (Both of those cases involved medical records and may be cognizable in New York under the caveat in MetLife concerning a special relationship, that between the patient and a doctor or health care provider.)
The California court reviews a variety of factors as militating against recognition of the tort or spoliation. A primary factor, the court notes, is the availability of other sanctions to deter the conduct, which, in California, include penal sanctions. The court expresses great reluctance to creating endless derivative litigation, including
“the obvious burden to the judicial system, litigants, *858 and witnesses, inherent in derivative litigation. Beyond these burdens, in the case of third party spoliation additional burdens arise from the circumstance that the class of potential plaintiffs and defendants is greatly expanded. As noted, both parties in the underlying litigation may be injured by a third party’s single act of destruction of evidence, thereby giving rise to two claims with potentially inconsistent or duplicative verdicts. In the products liability situation, for example, a manufacturer held partially liable for the plaintiffs injury may claim injury arising from spoliation, while the plaintiff in the underlying litigation may claim that but for the spoliation, his or her recovery would have been greater. In addition, although spoliation claims between parties have an inherently limited number of potential defendants, if spoliation by nonparties were actionable in tort, the cast of potential defendants would be much larger. We believe the broad threat of potential liability, including that for punitive damages, might well cause numerous persons and entei'prises to undertake wasteful and unnecessary record and evidence retention practices.” (Temple, 20 Cal 4th at 476, 976 P2d at 231-232.)
The Supreme Court of West Virginia noted that more than 26 jurisdictions had considered the tort and that most had not adopted it. (Hannah v Heeter, 213 W Va 704, 711, 584 SE2d 560, 567 [2003].) The Supreme Court of New Mexico noted that “a majority of jurisdictions had rejected a separate cause of action for intentional spoliation of evidence and had chosen, instead, to rely exclusively on traditional remedies” (Torres v El Paso Elec. Co., 127 NM 729, 745, 987 P2d 386, 402 [1999]).
The courts that have recognized an independent action for spoliation of evidence have generally acknowledged the problematic nature of the action. Nevertheless, when there is spoliation by a nonparty to the primary litigation, there may be no other available remedy to protect the truth seeking process. The recognition of the independent tort of spoliation against a third party is found to be a necessary remedy to protect this process and outweighs any problems created by recognition of the tort.
The Montana Supreme Court in Oliver found that
“[r]elevant evidence is critical to the search for the truth. The intentional or negligent destruction or spoliation of evidence cannot be condoned and *859 threatens the very integrity of our judicial system. There can be no truth, fairness, or justice in a civil action where relevant evidence has been destroyed before trial. Historically, our judicial system has fostered methods and safeguards to insure that relevant evidence is preserved. Ultimately, the responsibility rests with both the trial and appellate courts to insure that the parties to the litigation have a fair opportunity to present their claims or defenses.” (Oliver v Stimson Lbr. Co., supra, 297 Mont at 344-345, 993 P2d at 17.)
In Hannah (supra), the West Virginia Supreme Court went on to recognize spoliation of evidence as a stand-alone tort when the spoliation was the result of the negligence of a third party and the third party had a special duty to preserve the evidence. The court found that where relevant evidence is destroyed by a third party, negligent spoliation as an independent tort may exist because
“[ujnlike a party to a civil action, a third party spoliator is not subject to . . . sanctions. Thus, when a third party destroys evidence, the party who is injured by the spoliation does not have the benefit of existing remedies. Such a result conflicts with our policy of providing a remedy for every wrong and compensating victims of tortious conduct.” (213 W Va at 711, 584 SE2d at 568.)
Reconciling MetLife and DiDomenico, this court is compelled to find that even an unintentional and negligent violation of the court order to preserve the vehicle may support a cause of action for spoliation. The issuance and service of the court order in the instant case places this matter squarely within one of the caveats set forth by the Court of Appeals in MetLife. Clearly, in DiDomenico, the Second Department did not find there was adequate sanctions to deter the destruction of evidence without recognition of the independent tort of spoliation.
Enforcement of court orders goes to the very underpinning of our legal system and without enforcement there would be no rule of law. A third party on notice of an order to preserve identified evidence disregards its mandates at its peril. Whether the failure to obey the order is done intentionally or due to the inadvertent or negligent failure to take appropriate and necessary actions to assure compliance with the order, the effect upon the underlying litigation is the same. As noted in the Second Department, “[spoliation sanctions . . . are not limited to cases where *860 the evidence was destroyed willfully or in bad faith, since a party’s negligent loss of evidence can be just as fatal to [an]other party’s ability to present [a case or] a defense.” (DiDomenico, 252 AD2d at 53.)
Thus, the court finds that plaintiffs have asserted a cognizable claim for the independent tort of negligent spoliation. Plaintiffs have not, however, established their right to summary judgment on the issue of liability.
Accepting the Montana Supreme Court’s outlines of the elements of the tort, which generally incorporates the requirements set forth by other courts that have recognized the tort, and includes the most generous causation elements, the elements of the tort of spoliation of evidence include:
“(1) existence of a potential civil action;
“(2) a legal or contractual duty to preserve evidence which is relevant to that action;
“(3) destruction of that evidence;
“(4) significant impairment in the ability to prove the potential civil action;
“(5) a causal connection between the destruction of the evidence and the inability to prove the lawsuit;
“(6) a significant possibility of success of the potential civil action if the evidence were available; and
“(7) damages.” (Oliver, supra, 297 Mont at 348, 993 P2d at 19.)
In New York, element number two must satisfy the mandates of MetLife and can only be met by a written contract, special relationship or court order.
Plaintiff Peralta has established only the second and third elements. Plaintiff Ortega has failed to show even that. As to the fourth and fifth elements, the defendant’s expert disputes and creates a material issue of fact as to the extent to which the destruction of the vehicle impaired plaintiffs’ action and whether plaintiffs may not pursue the action through other proof. Finally, as to the first and sixth elements, plaintiffs have barely alluded to the potential actions that might have been available to them and failed to show any significant possibility of success on the merits; neither of which, under the circumstances of this case, are self-evident. Finally, there is the issue as to the extent that confusion regarding the identity of the vehicle contributed to the failure to preserve it and the extent to which that confusion *861 was caused, by plaintiffs and their counsel, in effect, an affirmative defense to the action.
As to plaintiff Ortega, the court orders at issue in the instant matter were sought by and issued only on behalf of plaintiff Peralta. Plaintiff Ortega did not seek or obtain a court order. Moreover, it is self-evident that the interests of Ortega, the owner/ driver, and Peralta, the passenger, are not coextensive. For this reason, in accordance with the Court of Appeals decision in MetLife, the court, on its own motion, upon searching the record, must grant summary judgment to the defendant City of New York on the spoliation claim of plaintiff Ortega.
For the foregoing reasons, plaintiffs’ motion for summary judgment on the spoliation claim must be denied and summary judgment against plaintiff Ortega on the spoliation claim must be granted.
The second branch of the motion is for summary judgment by the plaintiffs on their cause of action for contempt. At the outset, it must be stated again that only plaintiff Peralta obtained the order to preserve the vehicle. This was in connection with a prior special proceeding in which Peralta was the sole named petitioner and was brought under a separate index number from the instant action.
Courts have held that an application to punish for civil contempt does not constitute a separate independent proceeding, but is a motion in the principal action in which the subject order was issued. (Shapiro v Shapiro, 60 Misc 2d 622 [Sup Ct, Queens County 1969]; Long Is. Trust Co. v Rosenberg, 82 AD2d 591 [2d Dept 1981].)
“If the alleged contemnor was not a party to the action out of which the contempt arises, it has been held that the application to punish for contempt must take the form of a special proceeding. If the alleged contemnor was a party, the more usual situation, the procedure to punish for contempt is a motion, which may be brought on by the usual notice of motion or by the alternative of an order to show cause. As a mere motion, it should bear the caption of the action or proceeding out of which the contempt arises and should ordinarily be sought from the court in the county in which that action or proceeding was brought.
“Specifically designated a motion, the application should not, as long as the contemnor was a party, be *862 deemed a separate special proceeding, unless perhaps it seeks to punish a contempt emanating from a non-judicial proceeding, such as one before an administrative agency. In that instance there would be no pending court action or proceeding to supply the context for a motion.” (Siegel, NY Prac § 484, at 815 [4th ed] [emphasis added].)
As previously noted, the order at issue in the instant matter was issued in connection with a prior special proceeding for preaction discovery. The proceeding was brought under a separate, prior index number and the order was issued by the Honorable Gerald Rosenberg.
As a matter of policy, punishment for violation of an order would best be determined by the judge who issued the order, provided that the judge was available to hear the matter. The issuing judge is best situated to know the underlying facts and circumstances surrounding the issuance of the order and is best suited to determine the extent to which its violation should be punished. During the course of a contempt proceeding, it may develop that the initial order was defective or not enforceable, because it was too indefinite to be enforced or for some other reason. A judge of concurrent jurisdiction should not be called on to make such a determination regarding another judge’s order.
Moreover, 22 NYCRR 202.3 states in pertinent part that:
“(a) General. There shall be established for all civil actions and proceedings heard in the Supreme Court and County Court an individual assignment system which provides for the continuous supervision of each action and proceeding by a single judge . . .
“(b) Assignments. Actions and proceedings shall be assigned to the judges of the court upon the filing with the court of a request for judicial intervention . . . The judge thereby assigned shall be known as the ‘assigned judge’ with respect to that matter and . . . shall conduct all further proceedings therein.” (Emphasis added.)
It is well settled that in keeping with the spirit of the “Individual Assignment System (IAS), a subsequent action in the course of the same litigation should be referred to the Judge that entertained the earlier proceedings . . . , thereby promoting the objectives of the IAS system to avoid inconsistent rulings and promote judicial economy.” (Clearwater Realty Co. v Hernandez, 256 AD2d 100, 102 [1st Dept 1998].) Plaintiffs’ sep *863 arate action for contempt may be read as an end run on the mandate of the court rule requiring all proceedings in an action to be heard by the assigned judge. Under other circumstances this might be construed as a form of forum shopping.
A contempt proceeding is an entirely statutory remedy and is strictly construed. Plaintiffs should be mindful of Judiciary Law § 756, which includes, in relevant part:
“An application to punish for a contempt punishable civilly may be commenced by notice of motion returnable before the court or judge authorized to punish for the offense, or by an order of such court or judge requiring the accused to show cause before it, or him . . . why the accused should not be punished for the alleged offense. The application shall contain on its face a notice that the purpose of the hearing is to punish the accused for a contempt of court, and that such punishment may consist of fine or imprisonment, or both, according to law together with the following legend printed or type written in a size equal to at least eight point bold type:
WARNING:
YOUR FAILURE TO APPEAR IN COURT MAY RESULT IN YOUR IMMEDIATE ARREST AND IMPRISONMENT FOR CONTEMPT OF COURT.”
It is well settled that an application to punish for contempt that does not contain the warnings required by Judiciary Law § 756 is jurisdictionally defective and should not be entertained by the court (see Cappello v Cappello, 274 AD2d 538 [2000]; Matter of Dawn P., 180 AD2d 800 [1992]; Matter of P&N Tiffany Props. v Williams, 302 AD2d 466 [2003], appeal denied 100 NY2d 512 [2003]).
The summons in the instant action does not comply with the requirements of Judiciary Law § 756 and contains no warnings on its face. The defect is waivable, however, if the respondent (defendant herein) proceeds to litigate the matter on the merits *864 without raising it (see Matter of Rappaport, 58 NY2d 725 [1982]; Matter of Restivo v Cincu, 11 AD3d 621 [2004]; Matter of Laland v Edmond, 13 AD3d 451 [2004]).
Finally, it is worth noting that concerns regarding causation and damages that appear in the spoliation cases are reiterated in the context of a contempt proceeding. Thus, it is well settled that the plaintiff must show that it suffered an actual loss to recover compensation in a contempt proceeding. In Matter of Barclays Bank v Hughes (306 AD2d 406 [2d Dept 2003]), for example, the Second Department reduced a fine for civil contempt from nearly $1 million to $250, finding that the plaintiff failed to establish that it suffered an actual loss from the contemptuous conduct.
Pursuant to Judiciary Law § 773, the amount of a contempt fine should be sufficient to indemnify the aggrieved party for “actual loss or injury” caused “by reason of the misconduct” (emphasis supplied; see Matter of Lembo v Mayendia-Valdes, 293 AD2d 789 [2002]; Rechberger v Rechberger, 139 AD2d 906, 907 [1988]). Unlike criminal contempt sanctions which are intended to punish, civil contempt fines are intended to compensate victims for their losses (see State of New York v Unique Ideas, 44 NY2d 345 [1978]; Berkowitz v Astro Moving & Stor. Co., 240 AD2d 450 [1997]). The party seeking a contempt order must prove actual loss, failing which “the court may only impose a fine which does not exceed the complainant’s costs and expenses, plus an additional $250” (Berkowitz v Astro Moving & Stor. Co., supra at 452; Rechberger v Rechberger, supra). Legal fees and disbursements are also recoverable (see Children’s Vil. v Greenburgh Eleven Teachers’ Union Fedn. of Teachers, Local 1532, AFT, AFL-CIO, 249 AD2d 435 [1998]; Matter of Barclays Bank v Hughes, 306 AD2d 406, 407 [2d Dept 2003]).
While the damage issues are not before this court, the plaintiffs should be mindful that the cases suggest, without stating, that the “actual loss” standard sets a fairly high bar for the standard of proof necessary to establish the right to a civil contempt monetary remedy beyond the $250 plus costs and expenses.
For the foregoing reasons, under the circumstances presented, the court finds that spoliation of evidence is recognized as a cause of action in New York and Peralta has asserted a cognizable claim but failed to establish entitlement to summary judgment on the claim. The plaintiffs’ motion for summary judgment is denied in all respects and the court, on its own motion *865 and upon searching the record, grants summary judgment in favor of the City of New York against plaintiff Ortega on both causes of action and against plaintiff Peralta on the second cause of action for contempt. The cause of action by Ortega for spoliation of evidence and the cause of action by Ortega and Peralta for contempt are hereby dismissed.