■ ROBERT B. WEBER et al., Appellants, v HARLEY-DAVIDSON MOTOR COMPANY, INC., et al., Respondents. [871 NYS2d 698]—

In an action to recover damages for personal injuries, etc., the plaintiffs appeal from an order of the Supreme Court, Queens County (Elliot, J.), dated August 9, 2007, which denied their motion to strike the respective answers and affirmative defenses of the defendants pursuant to CPLR 3126 (3) for failure to comply with discovery demands, and based on the spoliation of evidence, and for summary judgment on the issue of liability.

Ordered that the order is modified, on the law and in the exercise of discretion, by adding provisions thereto directing the defendant Harley-Davidson Motor Company, Inc., to disclose all of the information it has regarding the subject circuit breaker,

including, inter alia, any data, tests, and analysis it performed, whether in response to inquiries by the National Highway Traffic Safety Administration or otherwise, and precluding the defendants from arguing or presenting evidence that the circuit breaker at issue was adequate for the purpose for which it was designed, or from arguing or presenting evidence as to any alternative source of the alleged total loss of electrical power that might have been rebutted by evidence obtained from the inspection and testing of the circuit breaker in accordance herewith; as so modified, the order is affirmed, with one bill of costs to the plaintiffs.

The plaintiff Robert B. Weber (hereinafter the plaintiff) purchased a motorcycle manufactured by the defendant Harley-Davidson Motor Company, Inc. (hereinafter Harley-Davidson), from the defendant Lighthouse Harley-Davidson, Inc. (hereinafter Lighthouse). In late 2003-early 2004, the National Highway Traffic Safety Administration notified Harley-Davidson that it was investigating complaints that the main circuit breakers on certain motorcycles were "tripping for no apparent reason." In response, Harley-Davidson noted that it had received reports in 2001 of such occurrences during "rest or 'parade' conditions," and in mid-to-late 2003 of such occurrences on moving motorcycles. Harley-Davidson further noted that its own tests "showed very inconsistent results," including that the "flow of current tolerated through main circuit breaker was affected by amperage, heat and vibration." In March 2004 Harley-Davidson initiated a voluntary recall of certain motorcycles, including the plaintiff's. The recall affected 81,496 motorcycles, 49,287 of which were remedied. In relevant part, the recall notice provided as follow: "These motorcycles have a condition whereby the 40 Amp main circuit breaker could open due to reasons other than for which it was designed, causing an unexpected interruption of all electrical power to the motorcycle. This condition could cause a 'quit while riding' condition which would occur without warning and ultimately lead to a crash, thereby presenting a risk of death or injury to the rider. We strongly urge you to take your motorcycle to your dealer to have the appropriate service performed as soon as possible. Should you choose to ride your motorcycle prior to this service, we urge you to be aware of this condition."

The remedy provided involved the replacement of a 40-amp circuit breaker with a 50-amp circuit breaker. The recall did not provide for the testing of circuit breakers prior to replacement, or for the preservation of the same after replacement, and no such testing or preservation occurred. Rather, the replaced

breakers were returned to Harley-Davidson in Milwaukee, where all of the breakers were discarded.

The plaintiff received a recall notice and contacted Lighthouse. On May 15, 2004 while riding his motorcycle to Lighthouse for the remedy, the plaintiff crashed. According to the plaintiff, his motorcycle "went dead" in a turn on an exit ramp and he "went down." The plaintiff was able to restart the bike with the help of a jump start from a passing motorist and completed the trip to Lighthouse. According to the plaintiff, he told employees of Lighthouse how the crash had occurred, and complained to one employee that he had not been adequately warned of the danger presented by the circuit breaker. The employees of Lighthouse bandaged the plaintiff's arm, which was bleeding, and offered to call the police or an ambulance, which the plaintiff refused. According to employees of Lighthouse, the plaintiff complained only that he "lost the steering" on the motorcycle. The plaintiff waited at Lighthouse while the recall work was performed and then rode the motorcycle home, stopping at a bank along the way. According to the plaintiff, he had showered and shaved and was watching television when his wife remarked about his neck, which was swollen. The plaintiff was taken to the hospital, where he was diagnosed with three broken ribs and remained for five days. By letter dated June 28, 2004, counsel for the plaintiff notified Lighthouse that he had been retained by the plaintiff to prosecute a personal injury action and requested that the circuit breaker removed from the plaintiff's motorcycle be retained and preserved. The dates that the letter was sent by counsel from Howard Beach and received by Lighthouse in Huntington Station are not clear from the record. Although the letter indicates that it was sent by registered mail, return receipt requested, no documents related to the mailing were made part of the record. In addition, the plaintiff did not proffer any sworn assertions as to the same.

Lighthouse did not retain and preserve the circuit breaker. Rather, the circuit breaker was returned to Harley-Davidson in Milwaukee pursuant to the recall procedures. An employee from Harley-Davidson averred that the recall tag for the circuit breaker removed from the plaintiff's motorcycle was scanned at Harley-Davidson in Milwaukee on July 7, 2004 which, she opined, probably meant that the tag and circuit breaker were received several days earlier. In August 2004 the plaintiff and his wife commenced this action to recover damages for personal injuries, etc. The plaintiffs moved to strike the respective answers and affirmative defenses of the defendants pursuant to CPLR 3126 (3) on the ground, among others, that the circuit

breaker removed from his motorcycle had been discarded. Further, the plaintiffs argued, upon the grant of that relief, he should be awarded summary judgment on the issue of liability. The Supreme Court denied the motion. We modify.

The Supreme Court providently exercised its discretion in denying that branch of the plaintiffs' motion which was pursuant to CPLR 3126 (3) to strike the defendants' answers and affirmative defenses for failure to comply with discovery demands. The drastic remedy of striking an answer is inappropriate absent a clear showing that the failure to comply with discovery demands is willful, contumacious, or in bad faith (*see Jenkins v Proto Prop. Servs., LLC*, 54 AD3d 726 [2008]; *Denoyelles v Gallagher*, 40 AD3d 1027 [2007]). Here, the plaintiffs failed to demonstrate that the failure to produce the circuit breaker was the product of willful, contumacious, or bad faith conduct by either defendant (*see Jenkins v Proto Prop. Servs., LLC*, 54 AD3d 726 [2008]; *Denoyelles v Gallagher*, 40 AD3d 1027 [2007]). Further, the Supreme Court providently exercised its discretion in denying that branch of the plaintiffs' motion which was to strike the defendants' answers and affirmative defenses on the ground of spoliation of the circuit breaker after being on notice that such evidence might be needed for future litigation (*see Jenkins v Proto Prop. Servs., LLC*, 54 AD3d 726 [2008]; *Barnes v Paulin*, 52 AD3d 754 [2008]; *Denoyelles v Gallagher*, 40 AD3d 1027 [2007]; *DiDomenico v C & S Aeromatik Supplies*, 252 AD2d 41 [1998]). The loss of the circuit breaker did not leave the plaintiff "prejudicially bereft" of the means of prosecuting this action against the defendants (*see Jenkins v Proto Prop. Servs., LLC*, 54 AD3d 726 [2008]; *Barnes v Paulin*, 52 AD3d 754 [2008]; *Denoyelles v Gallagher*, 40 AD3d 1027 [2007]; *DiDomenico v C & S Aeromatik Supplies*, 252 AD2d 41 [1998]).

However, this does not mean that a lesser sanction is not warranted. The loss and apparent destruction of all of the removed circuit breakers deprived the plaintiffs of an opportunity to conduct their own testing and examination of the breaker. Thus, the plaintiffs are entitled to disclosure by Harley-Davidson of all of the information it has regarding the circuit breakers, including, inter alia, any data, tests, and analysis it performed, whether in response to inquiries by the National Highway Traffic Safety Administration or otherwise. Further, at trial, both defendants must be precluded from arguing or presenting evidence that the circuit breaker at issue was adequate for the purpose for which it was designed, or from arguing or presenting evidence as to any alternative source of the alleged total loss of electrical power that might have been rebutted by evidence

obtained from the inspection and testing of the circuit breaker. Finally, the jury must be instructed that, should it credit the testimony of the plaintiff that he suffered a total loss of electrical power to the motorcycle just prior to the crash, it may infer that the loss resulted from the failure of the circuit breaker to perform as intended.

The plaintiffs' remaining contention is without merit. Ritter, J.P., Florio, Miller and Carni, JJ., concur. [*See* 2007 NY Slip Op 32660(U).]